ARTHUR STEVEN FURLOTTE

*v.*

STATE OF TENNESSEE.

350 S. W. 2d 72.

(*Nashville,* December Term, 1960.)

Opinion filed July 26, 1961.

Rehearing Denied October 20, 1961.

WILLIAM GERBER, MARSHALL L. GERBER, Memphis, GERBER & GERBER, Memphis of counsel, for plaintiff in error.

Thomas E. Fox, Assistant Attorney General, for the State.

Mr. Justice Burnett delivered the opinion of the Court.

The plaintiff in error was indicted and convicted for violating Section 39-4301, T.C.A., by threatening to injure Paul Wright for the purpose of compelling Wright to sign a statement to the effect that he (Paul Wright) had engaged in an illicit love affair with the defendant's wife. The jury imposed a minimum and maximum sentence of two years for this offense.

There are some seven assignments of error but they could really all be boiled down and considered as one in that the insistence is that the evidence preponderates against the verdict and in favor of the innocence of the plaintiff in error. In other words this insistence is based around the argument that the acts of the plaintiff in error do not show a violation of the Code Section under which he is indicted (39-4301, T.C.A.). In order for determination of the question, it is necessary for us to make a brief summary of the evidence and apply the

proper construction of this statute under the evidence produced.

At the request of the plaintiff in error Paul Wright came to the home of the plaintiff in error about noon on January 22, 1959, and according to Wright after he had talked with the plaintiff in error for some four or five minutes, the plaintiff in error pulled a pistol from under a pillow on the couch on which he was sitting and began to inquire if an illicit relationship had not existed between Wright and the plaintiff in error's wife. Wright says he denied these things, and it was only when the plaintiff in error's wife came into where they were and insisted that he tell the plaintiff in error everything, and then upon the plaintiff in error pulling out this pistol and likewise pulling out a statement that he, the plaintiff in error, had written, that Wright agreed to the things written in this statement. He likewise says that he did not sign this statement and would not agree to these things until he was compelled to do so at the point of this pistol.

After the statement was signed, Wright started to leave and had some difficulty in opening the door. He says at this time that he was struck on the back of the head. This blow was serious enough that when he put his hand back to feel it there was blood, and as a result of this Wright went to a doctor's office.

From the doctor's office the police were informed of this instance, and they in turn went to the home of the plaintiff in error and were informed that the plaintiff in error was not there. They doubted these statements of the wife of the plaintiff in error and began a search of the house. In doing this they found the plaintiff in error

hidden under a dressing table with curtains around it. The officers likewise made a search of the house for a pistol but were unable to find one. They did though find a hole in the floor which is shown in the transcript of the evidence, and it is testified, that this hole was recently made. The plaintiff in error denies that he shot this hole there, and says that it was there when they moved into the house.

Some six months previous to this occasion the plaintiff in error and Wright had met at a restaurant and discussed the alleged affair that Wright was having with the wife of the plaintiff in error. Wright had been going to the restaurant of the plaintiff in error for some time prior to this, drinking beer, etc., and in this way he had become acquainted and interested in the wife of the plaintiff in error. The plaintiff in error apparently was suspicious of this and found out about it before he met Wright six months before the happenings related hereinabove. At this meeting at the cafe Wright admitted that he had been out with the wife of the plaintiff in error and had kissed her a few times but denied any illicit relations with her. Apparently at this meeting the plaintiff in error agreed with Wright that he would not inform Wright's wife about these occurrences.

The plaintiff in error testified in his own behalf to the effect that he had Wright sign the statement after questioning Wright about the occurrences which had happened in the past six months since their cafe meeting, and after questioning him about it and Wright having admitted having done these things that he, plaintiff in error, wrote out the statement of the illicit relationship with the wife of the plaintiff in error, and then Wright

signed this statement. Plaintiff in error in his testimony denies that he had written this statement out previous to the time Wright arrived at his home in January when the statement was signed. In a statement given the police officers immediately after arrest he makes contradictory statements. In other words, the only inference from this statement that he made to the police immediately after arrest, was that he had this statement which was to be signed already written out when Wright arrived at his house in January. The plaintiff in error further says that Wright did have some difficulty getting out the door and that when he went to help Wright open the door, Wright tired to take the signed statement away from him (plaintiff in error) and then a fist fight took place between them, that is, plaintiff in error and Wright, in which plaintiff in error's wife got hit on the nose.

█ Thus it is that we have inconsistent stories of these two parties, that is, the prosecuting witness and the plaintiff in error; we have inconsistences in the statements of the plaintiff in error made immediately upon arrest and those made upon the witness stand. All of these things including the respective witnesses on each side, those of the State and the testimony of the plaintiff in error, who appeared before the trial judge and jury, and we have the finding of that body supporting the theory of the prosecuting witness and other State's witnesses. Under such a situation it is the universal rule that the jury resolves these conflicts in the evidence and by their verdict has established the credibility of the witnesses. We are bound thereby. *Hargrove v. State,* 199 Tenn. 25, 281 S.W.2d 692. By this finding of the jury they apparently accepted the prosecution witness's statement that he was forced or required by pistol point

to sign the statement to the effect that he, Paul Wright, was having an illicit relationship with the defendant's wife. This statement in the admitted handwriting of the plaintiff in error, signed by Wright is in the record. It is so vulgar in many ways that we deem it unnecessary to here quote.

After reading this record we think unquestionably that the evidence does not preponderate against the verdict of the jury, and, to us, it is very believable, and, even if we were trying this as a jury from what we have read and seen of it, we think that Wright is correctly detailing the facts.

The statute in question, Section 39-4301, is the only Section under Chapter 43 of the Code, entitled, Threats and Extortion. The Section reads:

"If any person, either verbally or by written or printed communication, maliciously threaten to accuse another of a crime, offense, or immoral act, or to do any injury to the person, reputation, or property of another, with intent thereby to extort any money, property, or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall, on conviction, be punished * * *."

This statute under which this indictment was laid consists of a single sentence. It is to be observed that the part of this Section ending with the word "another" being the second word in line four, governs all that follows, and the rest of the Section falls into two parts; the first part ending with the word "whatever" in line five, and the second part beginning with the word "or" in line five and ending with the word "will" in line six.

All that follows deals solely with the punishment. The part of the quoted Section down to the word "another" deals with what threats constitute an extortion provided these threats or actions are done "with intent thereby to extort any money, property, or pecuniary advantage whatever," then follows the language which separates and distinguishes the purpose of extorting money and property from that part with the other language, "or to compel the person so threatened to do any act against his will". Separate and distinct from the events of threats with the intent to extort money or pecuniary advantage is clearly the meaning of this last quoted part, "or to compel the person", etc. In other words, clearly the word "or" as here used is a disjunctive participle that marks an alternative which as here used means either, as either this or that. In other words, you have one phrase after all these things are said with intent to extort money, etc., which is necessary for a conviction, or if the acts are done as outlined in the first part of this Section to compel the person so threatened to do any act against his will then under such circumstances obtaining a pecuniary advantage or getting property is not necessary.

"The intention to extort money or pecuniary advantage is not essential under a statute of the character under consideration." 62 Corpus Juris, page 936, Section 20, citing authorities. See also 86 C.J.S. Threats and Unlawful Communications sec. 4, p. 795. Our examination of the authorities cited show the statute under consideration to be very similar to our statute.

We have in the instant case under the statements of the prosecuting witness, Wright, threats made to him, which under the circumstances induced him through fear to

sign this statement admitting on his part a clear violation of the law for which he could be indicted and prosecuted. It is true that the plaintiff in error insists that his only purpose in having this statement signed was so that if he got into a divorce suit with his wife that it would be in his favor so that the court would award him the children, because of the things said in the statement and the illicit relationship with Wright.

Under this statute our Court in *State v. Morgan*, 50 Tenn. 262, held that a threat to compel a person to do a minor act of no great injury or serious importance would not be punishable. This statement was apparently taken from an old Massachusetts case. We see no reason herein why such reasoning is applicable, because the acts here complained of forcing one at the point of a pistol to sign a statement admitting an illicit relationship with another's wife for which dire consequences might happen to the one who made such a statement is not of minor consequence but really of very serious importance and under the statute it is punishable.

Of course, we, or any other redblooded man, do not, and will not, acquiesce in a man taking advantage of another's wife. This kind of situation frequently leads to murder or related crimes of one of both guilty parties. That though is not a question for this Court's consideration, because if the statute has been violated and the facts so show and there has been a conviction thereunder, it is our duty to affirm the conviction. We do not have pardoning power; this power is vested under our Constitution and laws in the Chief Executive of the State. The truth of these allegations of the actions between Wright and this man's wife is not a defense to the action under

this statute. *State v. Needham,* 147 Tenn. 50, 245 S.W. 527.

Insofar as we have been able to find the only two reported cases on this statute in this State are the two herein cited, the Needham case and the Morgan case.

In view of what has been said herein it becomes our duty to affirm this conviction.

### On Petition to Rehear

The plaintiff in error through able counsel has filed a sincere petition to rehear in this case. It is again argued that under the statute in question an intent to extort money, property or other pecuniary advantage is a necessary requirement to show a violation of this statute.

Counsel cites one additional authority for this position. *State v. Smith,* 197 Tenn. 350, 273 S.W.2d 143. It so happens that the Smith case was prepared for this Court by the author of the present opinion.

We do not hold in the Smith case that the intent to extort money, property or other pecuniary advantage was the sole ground upon which a conviction could be sustained under this statute. In the Smith case it so happened that there were sufficient allegations of extorting property or pecuniary advantage as is shown by the facts of that case. The Smith case is not authority for the position contended for herein.

After a thorough reconsideration of the matter and the questions herein presented we are satisfied that we correctly construed this statute in our original opinion.

For the reasons therein expressed in the original opinion the petition here must be denied.