BERNARD W. SWAIN, alias Bishop St. Psalm,
Plaintiff in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

407 S.W.2d 452.

(*Nashville,* December Term, 1965.)

Opinion filed October 7, 1966.

146

JAMES T. HAVRON, Nashville, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, EDGAR P. CALHOUN, Assistant Attorney General, and HARRY G. NICHOL, District Attorney General, Nashville, prosecuted case for State in trial court.

MR. JUSTICE CRESON delivered the opinion of the Court.

This appeal comes from the Criminal Court of Davidson County, Tennessee. The parties will be referred to herein as they appeared in the trial court; that is, Bernard W. Swain, alias Bishop St. Psalm, plaintiff in error, as defendant, and defendant in error as the State.

At the January, 1964 Term of Criminal Court of Davidson County, Tennessee, the defendant was charged

by presentment with the violation of T.C.A. sec. 39-4301, which reads in pertinent part, as follows:

> "*Threats for purpose of extortion or obtaining action —Penalty.*—If any person, either verbally or by written or printed communication, maliciously threaten * * * to do any injury to the person, reputation or property of another, with intent thereby to extort any money, property, or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall, on conviction, be punished by imprisonment in the penitentiary not less than two (2) years nor more than five (5) years."

The presentment charged that the defendant had threatened to do injury to the business of one Johnny Beazley, owner and operator of Johnny Beazley's Falstaff Distributing Company, by instituting a boycott among the colored members of the community, and that defendant received from the aforementioned Mr. Beazley the sum of $3,000.00, in cash, and a check for $1,200.00, supposedly for advertising in a publication owned, published and distributed by the defendant, and known as "The Epic", in order to end the boycott. The boycott, it is charged, was instituted under the guise of an organization called "The Nashville Business Men Association", of which the defendant was President and Chairman. The defendant pleaded not guilty to the charge against him.

On November 15, 1965, the defendant filed a motion for a change of venue. On November 17, 1965, the defendant's motion for change of venue was overruled, to which action defendant's counsel excepted. On November 18, 1965, the defendant was brought to trial for the crime charged in the previously mentioned presentment.

On November 19, 1965, the jury returned a verdict finding the defendant guilty of extortion, in violation of T.C.A. sec. 39-4301, and fixed the defendant's punishment at a period of not more than four years. On that same date, the trial judge entered a judgment in accord with the jury's verdict, and sentenced the defendant to not more than four years nor less than two years in the State Penitentiary. On December 20, 1965, the defendant filed a motion for new trial, which was amended on January 14, 1966. The motion for new trial was subsequently overruled. Appeal has been timely perfected to this Court.

Defendant's first three assignments of error in this Court urge that the evidence preponderates against the jury's verdict of guilty. In order to give due consideration to these assignments of error, it is necessary to briefly summarize the evidence contained in the Bill of Exceptions filed in this Court. The main witness for the State, Mr. Johnny Beazley, testified that on or about January 2, 1964, the defendant visited his office and demanded that Mr. Beazley hire three additional Negro salesmen. Mr. Beazley objected, on the grounds that he could not hire any more employees unless he fired others to make room for them, and that, at that time, about fifty per cent of his employees were Negroes. The defendant, at that time, threatened Mr. Beazley, that "This is war". On or about the following Monday, Mr. Beazley learned from some of his salesmen that a boycott against his business was being conducted by Negro retailers in the Nashville area, and that certain handbills were being distributed urging these retailers to refuse to buy or sell Falstaff Beer until Mr. Beazley hired more Negro salesmen. These handbills purported to be published by The

Nashville Business Men Association and stated that, for further information, one should call Epic magazine. Mr. Beazley further testified that at about 5:00 P.M. that same day, he received a telephone call from the defendant, who asked him to meet the defendant at Price's Dinner Club, if he would like to stop the boycott. Mr. Beazley went to the aforementioned Dinner Club, where he was met by the defendant and Mr. Price, and was frisked by the defendant in order to ascertain whether or not Mr. Beazley had a tape recorder. Thereafter, discussion took place during which Mr. Beazley agreed to hire one additional Negro salesman and, after the defendant's statement that he had incurred a tremendous expense in the boyoctt, Mr. Beazley offered to pay $300.00 or $400.00 to cover it. To this the defendant, according to Mr. Beazley's testimony, replied that it would take at least $3,000.00 to cover his expenses, and suggested that Mr. Beazley take additional advertising in Epic magazine; that this advertising would cost $300.00 a month and that a prepayment of four months would be required. After Mr. Beazley agreed to this, the defendant instructed Mr. Beazley to accompany him to a meeting of The Nashville Business Men Association, but assured Mr. Beazley that this was a mere formality. Mr. Beazley testified that prior to this, he had paid only $81.50 a month for a half-page of advertising in defendant's magazine. Mr. Beazley further testified that the defendant insisted that he pay him the $3,000.00 in cash, rather than by check. This testimony of Mr. Beazley is corroborated to a large extent by the testimony of his employee, Mr. Sbuttoni, and a Miss Helen Sykes.

The defendant, himself, did not testify, but several Negro businessmen did testify. From their testimony,

it is apparent that The Nashville Business Men Association had not actually met prior to the boycott, and that several of them did not even know of the boycott until they were invited to the meeting Mr. Beazley attended the night after it had begun. All of these Negro business leaders testified, emphatically, that they had received none of the $3,000.00 paid by Mr. Beazley, nor did they know anything of the $3,000.00 paid by Mr. Beazley.

From this evidence, contained in the Bill of Exceptions, it becomes apparent that there is no merit in these first three assignments of error for clearly the evidence adduced at the trial supports the verdict of the jury, and certainly cannot be said to preponderate against it.

■ Defendant's fourth assignment of error urges that the trial court erred in overruling his motion for a change of venue. T.C.A. sec. 40-2201 and cases cited thereunder establish, beyond doubt, that the question of change of venue is one largely within the discretion of the trial judge and there must be a clear abuse of this discretion for this Court to reverse his action. See *King v. State* (1892) 91 Tenn. 617, 20 S.W. 169. After careful consideration of all the material contained in this record concerning defendant's motion for a change of venue, this Court had reached the conclusion that the trial judge did not abuse his discretion in refusing to sustain defendant's motion.

Defendant's fifth assignment of error argues that the trial court erred in refusing to discharge for cause a William J. Wallace from the jury panel. Suffice it to say in answer to this assignment of error, that the defendant exercised one of his peremptory challenges to excuse

Mr. Wallace from the panel. This being the case, see *Long v. State* (1948) 187 Tenn. 139, 213 S.W.2d 37.

█ Defendant's assignments of error 6 and 7 urge that the trial court erred in overruling defendant's motion for a new trial on the ground that the trial court failed to discharge the entire jury panel because it was shown that the jurors had read and/or discussed a newspaper article regarding previous convictions of the defendant and details of the case on trial. From a careful reading of the *voir dire* this Court fails to find any evidence that any substantial number of jurors read the newspaper article, or that there was any discussion of the newspaper article. As was pointed out by the trial judge, the fact that this newspaper was found in the assembly room would seem to be irrelevant, for any of the jurors could have read the article in their morning newspaper at home. All of the jurors testified, under oath, under rigorous examination by the defendant's attorney, that they could, and would, render a fair and impartial verdict on the facts presented in the trial of this case; and specifically said that they had not previously formed opinion as to the guilt or innocence of the defendant. See *Dupes v. State* (1962) 209 Tenn. 506, 354 S.W.2d 453, where the following is said:

"We think this ruling was correct. The fact that a prospective juror has read about a case in a newspaper or heard some person mention it, is not sufficient to disqualify him if he is otherwise qualified and if he states on oath that, notwithstanding what he read or heard, he believes he can give the defendant a fair and impartial trial upon the law and the evidence. *Manning v. State,* 155 Tenn. 266, 277, 292 S.W.451; *O'Brien v.*

*State,* 205 Tenn. 405, 420-421, 326 S.W.2d 759; *Smith v. State,* 205 Tenn. 502, 533, 327 S.W.2d 308.''

■ ■ Defendant's assignment of error 8 urges that the trial court erred in allowing the charter of The Nashville Business Men Association to be introduced into evidence by Mr. Beazley. Since this was a certified copy of the charter of this corporation, its admission seems to be proper under T.C.A. sec. 48-115. It is pertinent here to note that the tenor of defendant Swain's defense was that the action here involved was that of this association. The purpose of this evidence was to demonstrate such body was not in formal existence at the time. However, even if this were not the case, the admission of this evidence would not constitute reversible error. Several members of the organization testified, on cross-examination, as to the date of incorporation and as to the fact that this was after the boycott here involved. This is the purpose indicated by the record for the admission of the charter. We think it proper; however, its introduction, if erroneous, would constitute, at most, harmless error.

■ Defendant's assignment of error 9 objects to the introduction into evidence of several copies of Epic magazine by Police Sergeant Harold Woods. This is said to be error because no sufficient groundwork was laid to permit the introduction of those documents by that witness. The handbills passed out to implement the boycott of Mr. Beazley's business by the Negro community specifically refer such community for detailed information to the Epic magazine. The record leaves no doubt but that the publisher thereof was the defendant Swain. It was shown that Sergeant Woods was familiar with

these publications and was aware of the fact that the defendant was the publisher of these magazines. We see no error in the introduction of these magazines by Sergeant Woods.

■ Defendant's assignment of error 10 urges that the trial court erred in allowing defendant's witness, John Driver, to testify as to a telephone conversation he had with Mr. Beazley. It is alleged that this is error because this testimony constituted hearsay. This is an erroneous conception. As stated in the brief of defendant, and as is quite apparent from the record, those so-called members of the association were acting in concert. It is evident from reading the record that this testimony of Driver, as to his telephone conversation with Mr. Beazley, was not taken to prove the truth or falsity of any statements made by Mr. Beazley, but merely to illustrate that Mr. Driver, a member of The Nashville Business Men Association, was not aware that any money was being paid by Mr. Beazley to anyone. Mr. Beazley had already testified as to the fact that he had paid this money to the defendant. Thus, this evidence does not fall within the hearsay rule. See *Letellier-Phillips Paper Co. et al. v. Fiedler et al.* (1949) 32 Tenn.App. 137, 222 S.W.2d 42.

In the brief, much emphasis was placed upon the idea that the contacting of Beazley by the defendant Swain was motivated solely by his zeal to see that additional Negroes were employed. Upon a close reading of this record, it is abundantly clear that this portion of defendant's activity constitutes no more nor less than a thinly veiled effort to erect a facade of legality to cover or obscure his true and sinister intent and purpose to extort.

This Court, finding no merit in defendant's assignments of error, affirms the judgment of the trial court. The costs of this appeal are assessed against the plaintiff in error.

BURNETT, CHIEF JUSTICE, DYER and CHATTIN, JUSTICES, and HARBISON, SPECIAL JUSTICE, concur.