JOHNNY W. SHADDEN, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

### 455 S.W.2d 164.

Court of Criminal Appeals of Tennessee. March 25, 1970.

Certiorari Denied by Supreme Court May 18, 1970.

Jack Vaughan, Johnson City, for plaintiff in error.

George F. McCanless, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, Lewis W. May, Dist. Atty. Gen., Mountain City, for defendant in error.

## OPINION

OLIVER, Judge.

Johnny W. Shadden, the defendant below, represented there and here by retained counsel, was convicted of involuntary manslaughter in the Criminal Court of Washington County and was sentenced to imprisonment in the penitentiary for not less than one nor more than two years. His motion for a new trial being overruled, he is before this Court upon an appeal in the nature of a writ of error duly perfected.

By his first three Assignments of Error the defendant challenges the sufficiency of the evidence, insisting that it preponderates against the verdict and in favor of his innocence. In reviewing the evidence under these three Assignments of Error, we are bound by the rule, stated and restated over and over by our Supreme Court and this Court, that a jury's verdict of guilt, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in the evidence in favor of and establishes the State's theory of the case. Under such a verdict, the presumption of innocence, which the law accords an accused prior to conviction,

disappears and is replaced by a presumption of guilt which puts upon him the burden of showing upon appeal that the evidence preponderates against the verdict and in favor of his innocence. We may review the evidence only to determine whether it preponderates against the verdict and, in doing so, we must take the verdict as having established the credibility of the State's witnesses. The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn. Crim. App., 425 S.W.2d 799; Brown v. State, Tenn. Crim. App., 441 S.W.2d 485.

The rule that the credibility of the witnesses and conflicts in the testimony are all settled by the verdict of the jury, "makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, * * * in stating what we conclude the material facts to be as established by that testimony." Hargrove v. State, 199 Tenn. 25, 28, 281 S.W.2d 692, 694; Morrison v. State, 217 Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237.

The material evidence clearly accredited by the jury may be summarized briefly. Shortly after 12:00 a.m. on May 14, 1967, one James Leland Boyd, a pedestrian walking along the highway, was struck by an automobile operated by the defendant and died enroute to the hospital. The State and defense counsel stipulated that the deceased died as a result of being struck by an automobile driven by the defendant.

The deceased's body was found on the left side of the road, 82 feet from where his cap was found on the same

side of the road; one of his shoes was across the fence in a field on the left side of the highway near the body, and the other shoe was found on the right side of the road, 70 feet beyond the body.

The damage to the defendant's automobile was on the left front, hood and radiator. The site of the accident was in a dip in the highway located between 200 and 300 feet beyond a right-hand curve the defendant had just passed. The highway was dry. He told two investigating Highway Patrolmen on the scene that the deceased was walking on the right side of the road and suddenly jumped out in front of him; that he stopped and saw the man was hurt and went for help; that he had been drinking earlier in the evening and had gone to bed and had had two beers after he got up; that he was driving between 40 and 50 miles per hour; and that he saw the deceased with his hands up just about the time of impact. He was definitely under the influence of alcohol, in the opinion of the patrolmen. Two other witnesses had passed the deceased on the road that night prior to the accident.

The defendant testified that the accident occurred between 200 and 250 feet beyond the curve; that he was driving with his lights on dim, as he always does; that he was within 10 feet of the deceased when he saw him, and that the impact occurred by the time he got his foot on the brake; that the deceased came up on the hood of his car and was carried about 50 or 60 feet before he fell off; that he stopped and saw the deceased was hurt, then went to the home of Earl Lewis, the nearest acquaintance, who lived between 100 and 200 yards further on in the direction he was going, and called an

ambulance and the officers and then returned to the scene; that he was familiar with the road and was driving between 40 and 50 miles an hour; that the deceased was in the middle of the road and was turned sideways to him at impact; that he was driving on the righthand side of the road, possibly with the left side of his car a little to the left of the center of the road; that he drank two 12-ounce bottles of beer at the Eagle's Club after 10 o'clock that night and left there about midnight, but this did not affect his driving in any way; that he did not tell the Highway Patrolmen that he had been in bed the night before and drank both before and afterwards.

Although one of the Highway Patrolmen suggested to the defendant and his father, who was a deputy seheriff, the advisability of taking a blood alcohol test if he had not in fact had more than two beers, the defendant declined to do so after conferring privately with his father.

The defendant introduced various witnesses, including his father and the Sheriff under whom his father served, who testified that although the odor of alcohol was noticeable on the defendant's breath he was not, in their opinion, under the influence of an intoxicant. Other defense witnesses were equally positive that the defendant's breath bore no odor of alcohol.

█ Clearly, the evidence presented a jury question as to whether at the time and place of the fatal accident the defendant was so far under the influence of alcohol as to impair his ability to operate his automobile in the manner in which an ordinarily reasonable and prudent person, in full possession of his faculties, would operate a motor vehicle under the same or substantially similar

circumstances. The jury resolved that question against the defendant. He has not carried the burden of demonstrating here that the evidence preponderates against the verdict and in favor of his innocence.

T.C.A. § 59-1031 proscribes operation of motor vehicles on the highways and streets of the State by persons under the influence of an intoxicant or certain drugs. In Daniels v. State, 155 Tenn. 549, 558, 296 S.W. 20, the Supreme Court of this State said this:

"And in Hart v. State, 26 Ga.App. 64, 105 S.E. 383, it was held that it was not necessary for a driver to partake of intoxicating liquors until a state of drunkenness is reached, in order to violate a statute making it unlawful for a person to operate a motor vehicle upon a public highway while 'under the influence of intoxicating liquors.'"

And in Keller v. State, 155 Tenn. 633, 299 S.W. 803, the Court said:

"* * * This court has said that the Act [T.C.A. § 59-1031] relates to the use of intoxicants as a beverage by persons 'in such manner as to deprive them of their sense of discretion, and render them, in combination with an automobile on the highway, extremely dangerous agencies to the life and limb of others.' Bostwick v. State, 154 Tenn. 1 [285 S.W. 49].

\* \* \* \* \* \*

"We are of opinion that the driving of an automobile upon the public highways of the State by one 'who is under the influence of an intoxicant,' as the quoted words are interpreted in Bostwick v. State, *supra,* is an unlawful act *malum in se.* An automobile in the hands

of a sober and skillful driver upon the highway, operated according to law, is an instrumentality fraught with danger to others, and careful handling of such an instrumentality is essential to the public safety. It is highly criminal and perilous to life and property for those under the influence of an intoxicant to such an extent 'as to deprive them of their sense of discretion,' to undertake to run such a machine on the thoroughfares.

"Such being our view of the matter, we think the policy of the law forbids an investigation as to probable consequences, when the driver of an automobile 'under the influence of an intoxicant,' as heretofore defined, runs his car over another person and kills him on the public highways of the State. There are many things that a sober man, in the exercise of due care, would do to avoid such a collision, which would be entirely beyond an intoxicated driver. Fatalities are too numerous and conditions too serious to permit speculative inquiries in a case like the one before us."

The Court of Appeals of this State said in Rice Bros. Auto Co. v. Ely, 27 Tenn.App. 81, 85, 178 S.W.2d 88:

"Driving while drunk is an act malum in se, highly criminal, fraught with danger and evinces such entire want of care and indifference to results as to constitute wanton negligence."

Discussing homicide resulting from operation of a motor vehicle while intoxicated, the Supreme Court of this State made this significant statement in Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500:

"A homicide of this character, generally speaking, is either involuntary manslaughter, Keller v. State, 155 Tenn. 633, 299 S.W. 803, 59 A.L.R. 685, or second degree murder, Owen v. State, 188 Tenn. 459, 221 S.W.2d 515, and Rogers v. State, 196 Tenn. 263, 265 S.W.2d 559, dependent upon the facts of each particular case."

The remaining Assignments of Error argued and urged in this appeal complain that the defendant was denied a fair and impartial trial by reason of many improper comments and side remarks made by the District Attorney General in an attempt to interject improper matters before the jury. With commendable candor and frankness, defense counsel concedes in his brief that the trial court sustained defense objections in each instance. This record shows that the trial court sustained the defendant's objections to the remarks of the District Attorney General on each occasion and instructed the jury to disregard them.

Without encumbering this opinion with a detailed account, suffice it to say that the comments and remarks of the District Attorney General complained of were altogether improper and transgressed all bounds of legitimacy and propriety. However, upon careful consideration of the entire record, including the prompt action of the trial judge upon the defendant's objections on each such occasion, we cannot say that the District Attorney General's improper conduct influenced the verdict to the prejudice of the defendant. That is the general test applicable in such cases. Harrington v. State, 215 Tenn. 338, 385 S.W.2d 758; Morrison v. State, 217

Tenn. 374, 397 S.W.2d 826, 400 S.W.2d 237; King v. State, Tenn. Crim. App., 430 S.W.2d 810.

Finding no merit in any of the Assignments of Error, all of which have been carefully considered, the judgment of the trial court is affirmed.

This case was heard and submitted before Judge Galbreath became a member of the Court, and prior to enactment of Chapter 330 of the Public Acts of 1969 increasing the membership of the Court.

WALKER, P. J., concurs.