FRED EDWARD SHEROD, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.
—470 S.W.2d 860

May 28, 1971.

Certiorari Denied by Supreme Court September 7, 1971.

Walker Gwinn & Robert L. Dobbs, Memphis, for plaintiff in error.

David M. Pack, Attorney General, Robert H. Roberts, Assistant Attorney General, Nashville, Eugene C. Gaerig & Don A. Dino, Assistant District Attorneys General, Memphis, for defendant in error.

WALKER, P.J.  From his conviction of murder in the second degree with an automobile and sentence to ten years' imprisonment, Fred Edward Sherod, the defendant, appeals in error. His appellate counsel are different from his trial counsel. Throughout the proceedings he has had retained counsel.

By his first assignment of error, Sherod says the murder conviction should be set aside because the indictment did not charge that he killed the deceased with malice aforethought. This question is raised in this court for the first time.

The indictment charges that the defendant did ''unlawfully, feloniously, wilfully and maliciously kill and murder Jerry Lee Love, with an automobile, and thereby commit the crime of murder in the second degree.''

T.C.A. sec. 39-2401 defines murder:

''If any person of sound memory and discretion, unlawfully kill any reasonable creature in being, and

under the peace of the state, with malice aforethought, either express or implied, such person shall be guilty of murder."

In Witt v. State, 46 Tenn. 5 (1868), the indictment charged that the defendant: "(D)id then and there, willfully, maliciously, deliberately and premeditatedly, kill and murder * * *"

The Supreme Court held that the trial court should have arrested judgment. It said:

"The indictment in this record is fatally defective in omitting to charge that the offense was committed feloniously, or with malice aforethought; and containing no words of equivalent import. These words were absolutely essential to the sufficiency of an indictment at common law. The Code, secs. 5114 and 5120, declares, that indictments shall be framed in ordinary and concise language, and that where the common law prescribes particular and technical language, it is sufficient to describe the offense according to the general rules laid down in the Code. But this does not authorize the omission from the indictment of any words essential to the description of the offense.

"The words used in the definition of the offense of murder, in sec. 4597 of the Code, are 'unlawfully' and 'with malice aforethought.' The words used in this indictment, are not equivalent."

█ Malice aforethought is an essential element of murder whether it be of the first or second degree. In an indictment for murder, it is necessary to allege, either

expressly or by equivalent terms, that the homicide was committed with malice aforethought. See Warren on Homicide, Sec. 169; Wharton's Criminal Law, Sec. 242.

In Cravey v. State, 36 Tex.Cr.R. 90, 35 S.W. 658, the court held fatally defective an indictment alleging that the killing was done with "malice" omitting the word "aforethought."

Although the defendant made no motion to quash the indictment, we think that it lacks an essential element of second degree murder and therefore wholly fails to state a cause of action for that offense. This defect may be raised first on appeal. See Warden v. State, 214 Tenn. 391, 381 S.W.2d 244.

One cannot be convicted of more than he is charged with in an indictment. Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738. We may consider the lesser included offense of involuntary manslaughter which does not require malice aforethought. Huffman v. State, *supra;* Corlew v. State, 181 Tenn. 220, 180 S.W.2d 900.

The state's proof showed that the defendant, driving a Pontiac convertible automobile, with his girl friend beside him and the deceased on the back seat with his girl friend, Miss Key, beside him, was traveling west on Alcy Street in the city of Memphis; that he ran a stop sign at 35 to 40 miles per hour and was struck by a pickup camper truck driven north on Bellevue by Howard E. Smith. The deceased was dead on arrival at the hospital. An autopsy showed that he had a blood alcohol content of .17. No test was made of the defendant.

At the collision the odor of alcohol was present in the automobile and a partly filled half-gallon jar of wine was in the back seat of the car.

On the day before the collision, the four occupants of the automobile had been together. Mrs. Janis Frankland, grandmother of the deceased, testified that the defendant was drunk then and that she had taken the wine from the defendant and the deceased. The next morning they were back at her home about 6:00 or 6:30 with their companions. She said the defendant drank some of the wine, was cursing, staggering and acted like he was drunk; that he almost hit a light post as he drove from the yard.

The defendant denied drinking at all and contended that he was guilty of no culpable or criminal negligence. On account of a stomach condition, he said he was unable to drink; that he did not know that the deceased had brought the wine into the car.

The defendant contended that he stopped at the stop sign and proceeded into the intersection properly with the intention of making a left turn and entering a service station but that a third vehicle suddenly passed the camper truck and prevented him from executing his turn.

The defendant assigns as error the instructions of the court. He made no special requests. We think the charge as a whole is correct and that there was no prejudice to him. See Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500.

The state called as a witness, Miss Key, the girl friend of the deceased. The defendant assigns as error that the

court allowed her unsworn statement to be read into evidence after she testified contrary to it, denying that he was drinking. He alleges that this was particularly error without a cautionary instruction to consider it solely for impeachment.

The defendant did not object to her testimony and made no request the court caution the jury that her conflicting statements could be considered only on her credibility as a witness. The trial judge should have cautioned the jury without any request, but objections to evidence must be timely made or they are waived and cannot be raised for the first time on appeal. Floyd v. State, Tenn.Cr.App., 430 S.W.2d 888.

By an assignment the defendant cites a number of rulings to which he made no objection but which he says deprived him of a fair trial. We have carefully examined all of them and find no prejudicial error. We do not think any of them affected the outcome of the trial.

We find the evidence sustains a conviction for involuntary manslaughter. It being clear that the defendant is guilty of involuntary manslaughter, the judgment will be modified so as to adjudge him guilty of that offense with a sentence of one year in the penitentiary, provided the state indicates its consent. Otherwise, the case will be remanded for a new trial. See Corlew v. State, *supra.*

Russell, J., concurs.

Galbreath, J.(dissenting).

I must respectfully dissent from the majority view that the indictment in this case was insufficient to charge the felony of second degree murder.

Perhaps a hundred years or so ago the reasoning of the Supreme Court in Witt v. State. 46 Tenn. 5, would have been applicable to the indictment in this case. As noted recently by an outstanding legal scholar:

"There was a time in the law, extending into our own century, when no error was lightly forgiven. In that somber age of technicality the slightest error in a trial could spoil the judgment. The narrow bounds of propriety were entirely surrounded by booby traps.

"Consider, among manifold examples, an appellate court's review in 1863 of a conviction for robbery. The indictment charged that the defendant had taken certain property from the victim by threats and force. Could error cast a shadow on such clear words? Yes, said the Supreme Court of California; there was an error of omission. It reversed the judgment on the ground that the indictment failed to specify that the property taken did not belong to the defendant and hence failed to give him adequate notice of the crime charged.

"In this appellate court there would be no forgiving an error of omission, even one that involved only spelling. The court scrutinized an indictment that charged the defendant with entry into a building with intent to commit larcey. The omission of the letter *n* in larceny left the meaning clear, but reduced the word into two syllables. In the law such a flaw was fatal. There was

no such crime as the one charged, said the court; nor could larcey now be laced up with an *n*. The court would not invoke *idem sonans,* though anyone with larceny in his heart would be well-attuned to a charge of larcey. So there was a reversal, on the ground that the indictment failed to charge the defendant with the requisite specific felonious intent.

"Reversals for trivial errors occurred in many jurisdictions. New trials were ordered at the drop of a hat or a consonant that was needed to split a hair. However minuscule the errors, there was heroic spraying for overkill."

Traynor, Roger J. Riddle of Harmless Error, pp. 3-4.

In 1911 the General Assembly of Tennessee, following the lead of some states and showing the way for others, enacted the Harmless Error Statute which prevented such errors as noted by the majority in the indictment in this case from setting aside the results of a fair and exhaustive investigation in a trial in which every conceivable right of the defendant was preserved for a reason that did not and could not have affected the outcome one *Witt.*

Even *Witt* would have withstood the technical challenge here, since that case was one of murder in the first degree so that premeditation or "aforethought" was an essential ingredient of the crime. The Supreme Court in *Witt* said:

"The indictment would be good if it charged the offense according either to the common law, or the stat-

ute; but in this case it follows neither. It does not use the word "unlawfully", and does not charge the killing to have been unlawful, unless by dubious inference."

The indictment before us charges the killing was both "unlawfully AND maliciously" committed. This should communicate to anyone who reads or hears the words used that the State is accusing the defendant of having illegally taken the life of another person with malicious intent to harm him. Men of ordinary understanding, or even less, should have no difficulty in determining that the indictment means the malicious motivation charged existed prior to the act it is said to have precipitated. Malice, like any other drive, must precede the occurrence it causes. Just as it is most unusual for appetite to increase by feeding, it would be almost beyond understanding for malice to replace compassion after the killer takes his victim's life.

The Harmless Error Statute has prevented the reversal in this State of a number of cases in which convictions were obtained on technically defective indictments that would have been fatal in the Golden Age of Error of the middle and late nineteenth century. Blackman v. State, 169 Tenn. 197, 83 S.W.2d 899 (1936); Johnson v. State, 187 Tenn. 438, 315 S.W.2d 816 (1948). As stated by the Supreme Court in Blackman, *supra*:

"Certainly it does not affirmatively appear that any injustice whatever resulted to the defendant below from the alleged defect in the indictment on which he seeks now to rely for a reversal, and in this situation, Code, section 10654 (Pub.Acts 1911, ch. 32), expressly forbids a reversal in any criminal case for error in

acting on any indictment, or for any error in any procedure in the cause unless it affirmatively appears that the error complained of has affected the results of the trial.''

For the reasons expressed, I must respectfully dissent.