**Ralph MOORE, Plaintiff-in-Error,**

**v.**

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

Aug. 23, 1974.

Certiorari Denied by Supreme Court
Feb. 3, 1975.

John Alley, Hixson, for plaintiff in error.

David M. Pack, Atty. Gen., John B. Hagler, Jr., Asst. Atty. Gen., Nashville, Edward E. Davis, Dist. Atty. Gen., Chattanooga, for defendant in error.

## OPINION

DWYER, Judge.

The plaintiff-in-error, referred to here, as at the trial level, as the defendant, was

found guilty by a jury of violating T.C.A. 39-4301, with resulting punishment of confinement for not more than two years. The learned trial judge, in pronouncing judgment on the verdict, characterized the charge, under which the jury found the defendant guilty, as extortion.

There is some question as to whether or not the offense proscribed by T.C.A. 39-4301 and extortion are one and the same. We feel that the defendant in this case was properly convicted and sentenced. T.C.A. 39-4301 is found under Chapter 43 of the Code and is the only section in the chapter. The chapter title refers to the offenses listed thereunder as "Threats and Extortion." In Furlotte v. State, 209 Tenn. 122, 350 S.W.2d 72, T.C.A. 39-4301, under consideration here, was construed by our Supreme Court in the following language found at page 128, at page 74 of 350 S.W.2d:

> " . . . The part of the quoted Section down to the word 'another' deals with what *threats constitute an extortion* provided these threats or actions are done *'with intent* thereby to *extort any money,* property, or pecuniary advantage whatever,' . . . " (emphasis added)

In other words, as the writer views the statute, the gravamen of the condemned act is the threat coupled with the intent to extort. See Wharton's Criminal Law and Procedure, Anderson, Vol. 3, § 398, p. 796.

The foremost question in this record is whether or not what the defendant designates as "peaceful" picketing may be condemned by this statute, see T.C.A. 39-4301, or as stated by the attorney general: Can lawful means (picketing) be employed to achieve an illegal end (personal payoff)?

A look to the facts in this record amply illustrates, we think, the manner by which means (picketing), legal and lawful in themselves, can be rendered unlawful by the ends for which they are undertaken.

On July 12, 1972, the defendant, accompanied by a codefendant, who was acquit-

ted, approached the manager of the Red Food Store in Chattanooga. He requested of the manager a donation for the survival program of the Black Panther Party of which the defendant is a coordinator. The manager told them that he was without authority to authorize donations and that they must see a Mr. Blevins, president of the company. The defendant left and, in a few minutes, returned, inquiring as to whom it was that they were to see. After they were again informed and on parting, the defendant related, "Well, I guess we'll have to close them up." On July 18, the defendant and codefendant approached another officer of the corporation and requested a donation for the program. When told that they would have to make an appointment to see Mr. Blevins, they related that they had to have the donation before a rally that was to be held on August 5. The picketing commenced on August 10, 1972. The proof further shows that the defendant and two codefendants, with a few others, manned a picket line. There were instances in which they would approach cars coming onto the food store lot. Some of the cars left and others proceeded into the store parking area.

At the trial, Mr. Blevins related that he had never been approached for a contribution.

The defendant testified, and denied having made the statement about closing the place up.

From these facts, it is apparent that the purpose of the picketing was to harm the business interests of the food store. The defendant had no legitimate relationship with the store whereby this purpose could be approved under the protection of the First Amendment. The legend on the placard which he carried revealed that his intent was to pressure the store into contributing money to his cause. Also, the statement, "I guess we'll have to close them up," is a circumstance upon which the jury could determine the maliciousness of the threat and the intent be-

hind the picketing. All of this, taken together, indicates a subtle coercion, or threat, see Wharton's Criminal Law & Procedure, supra, which is not and cannot be constitutionally protected.

█ It is apparent that the Red Food Store should have a free and unencumbered right not to contribute, in a free system, secure in the knowledge that no retribution will be forthcoming under the guise of constitutional protection.

█ It is true that the citizenry, under the guarantees of the First Amendment, has the lawful right to assemble and to engage in peaceful demonstrations (picketing). See Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093; Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471. The argument is advanced that the defendant had the right to peacefully picket under constitutional safeguards and that, therefore, he could not be guilty of extortion. However, not every constitutional guarantee per se may be used as a shield to protect illegal activity. See Reynolds v. United States, 98 U.S. 145, 25 L.Ed. 244; Harden v. State, 188 Tenn. 17, 216 S.W.2d 708; Gaskin v. State, Tenn., 490 S.W.2d 521; Feiner v. New York, 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295. Justice Oliver Wendell Holmes best exemplified this by his contention that the most stringent protection of free speech would not protect a man in falsely shouting fire in a theatre and causing a panic. Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470.

In giving approval to the New York decision, People v. Dioguardi, 8 N.Y.2d 260, 203 N.Y.S.2d 870, 168 N.E.2d 683, the United States Supreme Court stated, ". . . when the objectives of the picketing change(s) from legitimate labor ends to personal payoffs, then the actions (become) extortionate." United States v. Emmons, 410 U.S. 396, 93 S.Ct. 1007, at footnote 16, p. 1013, 35 L.Ed.2d 379.

It is pointed out at 93 A.L.R.2d 1284, 1295, ". . . a lawful or proper purpose is a condition of the right of peaceful nonlabor picketing." Further, the United States Supreme Court has spoken in very similar language:

"Picketing is not beyond the control of a State if . . . the purpose which it seeks to effectuate gives ground for its disallowance." Hughes v. Superior Court, 339 U.S. 460, 465, 466, 70 S.Ct. 718, 721, 94 L.Ed. 985.

█ In this record it is apparent to us that the activity of Moore in engaging in a peaceful demonstration is nothing more than a facade to cover his illegal act. See Swain v. State, 219 Tenn. 145, 154, 407 S. W.2d 452.

We accordingly reject as completely unfounded by the evidence the contention that the defendant was convicted solely because he was a member of an unpopular party. The proof reflects an acquittal of two placard carrying codefendants who made no vocal threats and who offered no defense at the trial. The jury's recommendation of clemency for the defendant which was rejected by the court also militates against this contention.

█ We further find no merit in the contention that the trial court should have quashed the indictment because its wording as to "feloniously picketing", is constitutionally incongruous and does not adequately inform the defendant of the charge against him. This isolated statement alone may support defendant's contention; however, an indictment should not be read out of context, but rather as a whole, in determining whether or not it charges an offense with sufficient notice to the accused for the preparation of a defense. The wording of the indictment is as follows:

"The Grand Jurors for the State aforesaid, being duly summoned, elected, impaneled, sworn and charged to inquire for the body of the County aforesaid,

**608**

upon their oaths present: That Gerald Edwards, Ray Lindsey, Ralph Moore, and Madonna Storey heretofore on the 10th day of August, 1972, in the County aforesaid, did unlawfully, and feloniously picket the Red Food Store, Incorporated, a corporation, by continually obstructing the entrance to the store by walking back and forth in front thereof each displaying a sign; said sign of Ray Lindsey reading 'Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount to our Community Free Sickle Cell anemia testing program, a peoples survival program', said sign of Ralph Moore reading 'Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount to our Free Day Care for working mothers program, a peoples survival program', said sign of Madonna Storey reading 'Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount to our Free Food Program, a peoples survival program', said sign of Gerald Edwards reading 'Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount to our Free Breakfast for school childrens program, a peoples survival program', and such signs were calculated to cause injury to the reputation and property of the Red Food Store, Incorporated, a corporation, with the intent to extort money, property, and pecuniary advantage and to compel the Red Food Store, Incorporated, a corporation, to contribute money or property to said defendants against the will of the Red Food Store, Incorporated, a corporation, against the peace and dignity of the State."

We feel that this sufficiently gave defendant notice of the nature of the charge against him under the statute. See Jordan v. State, 156 Tenn. 509, 514, 3 S.W.2d 159. More is not required. We find no merit in this assignment.

Lastly, it is urged that the statute is unconstitutional as being vague and overbroad. He argues that the fact that the officers delayed the arrest of the defendant for several hours supports his contention that the statute is vague. This is not indicative, however. As the attorney general points out, juries ponder, in criminal cases, verdicts for several hours. The statute under which the conviction is had is not rendered vague thereby. Delay, alone, does not, we think, make the statute vague. On the other hand, the delay of the officials in making the arrest can attest to the fact of their reasonableness in not exercising sheer police power. We think that people of fair understanding and intelligence can grasp that it is illegal to threaten someone so as to induce him to do an act against his will. The statute is not overbroad and stifles no constitutional guarantee. The assignment is overruled.

The judgment of the trial court is affirmed.

RUSSELL, J., concurs.

OLIVER, Judge (dissenting).

The defendant and his co-defendants were jointly indicted and tried, the indictment charging that they "did unlawfully, and feloniously picket the Red Food Store, Incorporated, a corporation, by continually obstructing the entrance to the store by walking back and forth in front thereof each displaying a sign . . . and such signs were calculated to cause injury to the reputation and property of the Red Food Store, . . . with the intent to extort money, property, and pecuniary [sic] advantage and to compel the Red Food Store, . . . to contribute money or property to said defendants against the will of the Red Food Store, . . . against the peace and dignity of the State."

Moore's sign read "Boycott don't shop here. Red Food Store must support and donate every week a small minimal amount

to our Free Day Care for working mothers program, a peoples survival program." The co-defendants' signs differed from Moore's only in that each called upon the store to support a different "peoples survival program"—viz., the free sickle cell anemia testing program, the free food program, and the free breakfast for school children program.

At the beginning of the charge to the jury, the court instructed them that the indictment charged the defendants "with the offense of extortion" and that it was predicated upon TCA § 39–4301, which the court read to the jury and which provides as follows:

"Threats for purpose of extortion or obtaining action—Penalty.—If any person, either verbally or by written or printed communication, maliciously threaten to accuse another of a crime, offense, or immoral act, or to do any injury to the person, reputation or property of another, with intent thereby to extort any money, property, or pecuniary advantage whatever, or to compel the person so threatened to do any act against his will, he shall, on conviction, be punished by imprisonment in the penitentiary not less than two (2) years nor more than five (5) years."

The court also instructed the jury:

"The Court will further charge ·you that if threats or injury are made to compel the person threatened to do any act against his will, *the obtaining of a pecuniary advantage or getting property is ·not necessary to prove extortion.*

"The intention to extort money or pecuniary advantage is not an essential element under 39–4301, Tennessee Code Annotated."

Being thus specifically instructed that the defendants were charged with extortion, and that "the obtaining of a pecuniary advantage or getting property is not necessary to prove extortion," the jury acquitted the defendant's co-defendants and

reported their verdict as to him as "Guilty," and fixed his punishment at two years. Thereafter, addressing the defendant the court said: "Ralph Moore, it is the verdict of the jury and judgment of the Court that *you are found guilty as charged of extortion,* and you are sentenced to two years in the penitentiary." (Emphasis supplied). The Minute entry recording the trial and the judgment of the court recites that the jury found the defendant guilty of extortion. In their respective briefs presented to this Court, counsel for the defendant and for the State refer to the defendant's conviction of extortion. Thus, unquestionably he was convicted of that crime.

By one of his Assignments of Error Moore challenges the sufficiency of the evidence, insisting that it preponderates against the verdict of the jury. The material evidence may be summarized briefly. About a month before the picketing of the Red Food Store charged in the indictment, the defendant and one of the acquitted co-defendants, members of the Black Panther Party, asked the store manager for a donation to that organization's programs. The manager advised them that all donations had to come through the main office and they would have to see the company president or the person in charge of store operations. A short time later, they returned and asked the manager who they should contact; and, as they left after being advised "See the president of the company, Don Blevins," the defendant said to his co-defendant, "I guess we'll have to close them up." Because the president was involved in a board meeting when they went to his office on July 18th, the director of store operations talked to them and told them he was not authorized to make a contribution to their programs and explained to them that they would have to see the company president and suggested that they make an appointment with him. But the president never had any contact with any of the defendants and the Red Food Store made no contributions to them.

On the date charged in the indictment, the defendant and his co-defendants and other black people appeared on the sidewalk in front of the store, which was separated from the sidewalk by an intervening store parking area, and began walking to and fro carrying the signs above described. Some patrons turned and drove away after entering the parking lot, and others parked and entered the store, after the defendant or one of the co-defendants spoke to them as they entered the parking lot. Beyond that, the picketing activity was limited to walking along the public sidewalk, carrying the mentioned placards. Neither the store manager nor anyone else connected with it was threatened in any way, nor was any store patron.

Swain v. State, 219 Tenn. 145, 407 S.W. 2d 452 (1965) is the only reported case of a conviction of extortion under TCA § 39–4301. In that case the presentment charged and the proof established that, to carry out his pre-conceived plan of extortion, the defendant instigated a boycott of a business establishment by the Negro community, on the pretext the owner did not employ enough Negroes, and demanded from the owner and received $4200 and a $3600 contract for advertising in the defendant's magazine, the conditions laid down for ending the boycott, by threatening the owner with further damage and injury to his business unless he acceded to those demands. Thus, in that case the indictment charged extortion and the proof established that offense.

"The ordinary meaning of the word 'extortion' is the taking or obtaining of anything from another by means of illegal compulsion or oppressive exaction." 35 C. J.S. Extortion § 1. To constitute extortion, money or some other thing of value must have been received. Ibid. § 6. To charge extortion, the indictment or presentment must allege that the accused actually received something of value. Ibid. § 10.

Unquestionably, unlike the *Swain* case, supra, in the case now before us the indictment did not charge and the proof did not show that the defendant or any of his co-defendants demanded or received anything whatever from the Red Food Store. The record shows that no contributions of any kind were made to any of them by the store or by anyone connected with it. Plainly, therefore, they did not commit the crime of extortion.

Moreover, as noted, neither the defendant nor any of his co-defendants made any threat of harm or injury to any person or property. TCA § 39–4301 proscribes malicious *threats* (1) to accuse another of a crime or offense or immoral act, (2) to do any injury to the person or reputation or property of another with intent thereby to extort any money or property or pecuniary advantage whatever, or (3) to compel the person threatened to do any act against his will.

The indictment did not charge the defendants with threatening anyone. Instead, it charged them with unlawfully and feloniously picketing the store. This defendant and his companions simply engaged in peacefully picketing by walking on the sidewalk and carrying placards asking the people to boycott the store and personally asking individuals not to patronize it, after their fruitless request for a contribution to their cause. That was not a violation of TCA § 39–4301, absent any charge or proof of any *threat* whatever.

There is neither allegation nor proof in this record that the defendant or his co-defendants or any of their associates engaged in or threatened any violence or obstructed vehicle or pedestrian traffic or were boisterous or used any provocative or indecent language or interfered with the safe and convenient use of the city streets and sidewalk by the public or attempted to incite others to riot or to acts of violence. Reasonable peaceful picketing lawfully urging boycott of a business establishment, which does not improperly interfere with the public's right to safe and convenient use of the streets and other facilities, nor violates proper statutes or ordinances, designed for

the protection of such rights of the public, nor contravenes any paramount interest of the public at large or a valid public policy of the state, is a constitutionally protected right of free speech and free assembly and is not unlawful. See: Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965).

Also see, generally: International Brotherhood, Etc., v. Vogt, Inc., 354 U.S. 284, 77 S.Ct. 1166, 1 L.Ed.2d 1347 (1957).

In Hague v. Committee for Industrial Organization, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), a case involving union organizing, Mr. Justice Roberts made a statement which has been quoted in many opinions:

> "Wherever the title of streets and parks may rest, they have immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Such use of the streets and public places has, from ancient times, been a part of the privileges, immunities, rights, and liberties of citizens. The privilege of a citizen of the United States to use the streets and parks for communication of views on national questions may be regulated in the interest of all; it is not absolute, but relative, and must be exercised in subordination to the general comfort and convenience, and in consonance with peace and good order; but it must not, in the guise of regulation, be abridged or denied."

Following *Hague* by one year, and the case most closely similar factually with the present case, was Thornhill v. Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). That case dealt with peaceful picketing by employees against a manufacturing concern. The Court struck down, upon its face, an Alabama statute which forbade picketing or doing any activity that would influence persons not to trade with the business in question. The Court said:

> "The freedom of speech and of the press guaranteed by the Constitution embraces at the least the liberty to discuss publicly and truthfully all matters of public concern without previous restraint or fear of subsequent punishment. . . . Freedom of discussion, if it would fulfill its historic function in this nation, must embrace all issues about which information is needed or appropriate to enable the members of society to cope with the exigencies of their period.

> \*    \*    \*    \*    \*    \*

> "The range of activities proscribed by Section 3448, whether characterized as picketing or loitering or otherwise, embraces nearly every practicable, effective means whereby those interested—including the employees directly affected—may enlighten the public on the nature and causes of a labor dispute. The safeguarding of these means is essential to the securing of an informed and educated public opinion with respect to a matter which is of public concern. It may be that effective exercise of the means of advancing public knowledge may persuade some of those reached to refrain from entering into advantageous relations with the business establishment which is the scene of the dispute. Every expression of opinion on matters that are important has the potentiality of inducing action in the interests of one rather than another group in society. But the group in power at any moment may not impose penal sanctions on peaceful and truthful discussion of matters of public interest merely on a showing that others may thereby be persuaded to take action inconsistent with its interests. Abridgment of the liberty of such discussion can be justified only where the clear danger of substantive evils arises under circumstances affording no opportunity to test the merits of ideas by competition for acceptance in the market of public opinion."

In 1941 the Supreme Court of Massachusetts dealt with the case of a Jehovah's

Witness who was marching around the streets of Boston wearing a sandwich board with an advertisement of a religious meeting upon it. Citing Hague v. Committee for Industrial Organization and Thornhill v. Alabama, supra, among other United States Supreme Court decisions, the Court held that the defendant's conviction and $2.00 fine, predicated upon a city ordinance requiring a permit to engage in this type of activity, were unconstitutional. The Court's description of this man's activity seems apposite here:

"It is to be noted that there is no suggestion in the agreed facts that the defendant was obstructing traffic, causing danger, or annoying travellers in any way, or that the form of the placards or the writing upon them was indecent, libellous, likely to incite violence or otherwise objectionable." Commonwealth v. Anderson, 308 Mass. 370, 32 N.E.2d 684.

The prohibition, by vague standards, of orderly marches and parades on public streets has been held unconstitutional. Shuttlesworth v. City of Birmingham, Alabama, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed. 2d 162 (1969); Cox v. Louisiana, supra.

A Tennessee case that deals directly with this issue is Hood v. Stafford, 213 Tenn. 684, 378 S.W.2d 766 (1964). In that case the Court held that a city ordinance proscribing entering into a business house or standing on the street or sidewalk in front of a business house for the purpose of enticing people not to patronize it was valid and enforceable as against the defendant who was convicted of picketing the store upon its private parking lot where she was at the time a trespasser. Affirming the judgment of the Court of Appeals, which was predicated upon *Thornhill*, supra, and reversed the Circuit Court and reinstated the defendant's $25 fine in the city court for violation of the ordinance, the Court said:

"The Court of Appeals, in its opinion, recognized that, had the defendant been picketing and urging customers not to trade with Pic-Pac while on the public street or public sidewalk, the ordinance would not be enforceable under the facts of this case."

And our Supreme Court has repeatedly recognized and held that reasonable and lawful peaceful picketing for a legitimate object is constitutionally permissible. Rowe v. International Brotherhood, 186 Tenn. 265, 209 S.W.2d 35; Watson Co. v. Wilson et al., 187 Tenn. 402, 215 S.W.2d 801; Mascari v. International Brotherhood of Teamsters, Etc., 187 Tenn. 345, 215 S. W.2d 779; Nashville Corporation v. United Steelworkers, etc., 187 Tenn. 444, 449, 215 S.W.2d 818.

Thus, under the uncontroverted facts appearing in this record the defendant's admitted action in walking back and forth on the public sidewalk in front of the store, carrying a placard urging the public to boycott this business, did not constitute a crime. To hold otherwise would be to outlaw all legitimate peaceful picketing in this State, which, of course, the First and Fourteenth Amendments protect.

In Furlotte v. State, 209 Tenn. 122, 350 S.W.2d 72, cited by the Court today, it should be noted that Furlotte was convicted of *threatening* bodily injury to force Wright to sign a statement admitting intimacy with his (Furlotte's) wife, unlike this case where Moore was convicted of *extortion*. The difference is evident. As noted, TCA § 39–4301 is, by its very terms, *an anti-threat* statute, and no violation of that statute was either charged or proved.

Unquestionably, therefore, since neither any extortion nor any threat was either charged or proved to have occurred, and since the defendant's legitimate peaceful picketing attempting to promote a boycott was not a criminal act, he has carried his burden of demonstrating in this Court that the evidence preponderates against the verdict and in favor of his innocence. See: Shadden v. State, 2 Tenn.Cr.App. 450, 455 S.W.2d 164.

Conviction of a crime not charged or without evidence of guilt is a denial of due process of law. Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L. Ed.2d 654; Adderley v. State of Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149. See also: Sherod v. State, 4 Tenn.Cr.App. 344, 470 S.W.2d 860; Huffman v. State, 200 Tenn. 487, 292 S.W.2d 738.

The Assignments challenging the constitutionality of TCA § 39–4301, and complaining of the trial court's action in overruling the motion to quash the indictment, are without merit.

For the reasons stated, I cannot agree with the majority opinion. In my view, we have no alternative but to reverse the judgment below and dismiss this case.