NASHVILLE CORPORATION *v.* UNITED STEELWORKERS OF
AMERICA, CIO, *et al.*

(*Knoxville,* September Term, 1948.)

Opinion filed October 16, 1948.

R. H. BRAZZELL, of Nashville, and JEROME A. COOPER, of Birmingham, Ala., for appellants.

ARMISTEAD, WALLER, DAVIS & LANSDEN, of Nashville, for appellees.

MR. JUSTICE BURNETT delivered the opinion of the Court.

This appeal comes to us from a judgment of contempt wherein nine individuals were found guilty of violating an injunction issued by the Chancellor enjoining certain officers and representatives of the United Steelworkers of America, CIO, Local No. 4057, and its officers and members "from in any manner interfering with or attempting to interfere with or molest employees or prospective employees of complainant (The Nashville Corporation), or members of their families, by the use of threats, personal violence, assault, battery or intimidation, or by any other means of like character, calculated or intended to deter or prevent the employees of complainant from carrying out their duties as such employees, or to prevent prospective employees from accepting employment."

The Chancellor permitted peaceful picketing but limited the number of pickets and designated areas wherein they could picket. He later amended this temporary order so as to enjoin the defendants, their agents, members and associates "from congregating or loitering within a distance of 100 yards of any outside boundary of complainants plant or premises for the purpose of aiding or abetting the strike." He further decreed that none of the defendants, etc., should be permitted to act as pickets "within 100 yards of any outside boundary of complainants premises, except as herein expressly provided, and that picketing as herein used includes, but is not limited to, the hailing or accosting of employees or other persons, whether in automobiles, or other vehicles or on foot, on their way to or from complainant's plant or any public or private road, railroad track or other avenue of approach."

448

■ The injunction as amended was issued by the Chancellor on the original bill, the amended bill and numerous affidavits attached thereto as exhibits. Clearly under these pleadings the temporary injunction as issued was justified and demanded by reason of the sworn allegations (greasing of railway tracks into complainants plant, placing and throwing nails into and on complainants property, where automobiles traveled, and other acts constituting a destruction of property and the rights of the complainant) herein.

A few weeks after the above injunction issued a petition for attachment for contempt was filed against various named individuals alleging violation of the injunction. After a full hearing the Chancellor held the nine appellants guilty of contempt.

After the petition for attachment for contempt was served on these appellants they moved to dismiss said attachment because, among other things, the injunction under which it was issued "violates Art. 1, sections 19 and 23 of the Constitution of the State of Tennessee, and Amendments 1 and 14 of the Constitution of the United States, in that such application denies the defendants the right of freedom of speech and freedom of assembly, and further deprives them, and each of them, of rights of property without due process of law. Said injunction, so applied is illegal and void."

It is obvious from what has heretofore been said that the injunction herein is not a blanket injunction but is one properly issued, under the allegations and supporting affidavits, to reasonably restrain the defendants from doing irreparable damage to complainants' business and to protect its employees while in the discharge of their duties. Such supervisory restraint, allowing peaceful

picketing under the supervision of the Chancery court is as necessary under our constitutional framework as is the freedom of speech and freedom of assembly. These freedoms are not denied but merely supervised under the fair and watchful eye of the Chancellor. On proper allegations and showing, without more, a restraining order of the kind is eminently fair and proper.

We are well aware that picketing, when peacefully and lawfully conducted, is considered an exercise of the rights of free speech. *Thornhill* v. *State of Alabama*, 310 U. S. 88, 60 S. Ct. 736, 84 L. Ed. 1093; *Milk Wagon Drivers Union* v. *Meadowmoor Dairies, Inc.*, 312 U. S. 287, 61 S. Ct. 552, 555, 85 L. Ed. 836, 132 A. L. R. 1200. Where does this right end? It was said in the *Meadormoor Case, supra*: "But utterance in a context of violence can lose its significance as an appeal to reason and become part of an instrument of force. Such utterance was not meant to be sheltered by the Constitution." The same reasoning applies with equal force when the picketing becomes unlawful and the rights and property of others is destroyed, as they were under the allegations and supporting affidavits.

Under a showing such as we have, a court will, if it can consistent with safety, restrain the excesses and permit peaceful picketing to continue. Cases in point include *Lisse* v. *Local Union C. W. W.*, Cal. App. 24 P. 2d, 833; *International Pocketbook Workers Union* v. *Orlove*, 158 Md. 496, 148 A. 826; *Bayonne Textile Corp.* v. *American Fed. Silk Workers*, 116 N. J. Eq. 146, 172 A. 551, 92 A. L. R. 1450; *Wise Shoe Co.* v. *Lowenthal*, 266 N. Y. 264, 194 N. E. 749; *Mays Furs and Ready-to-Wear* v. *Bauer*, 282 N. Y. 331, 26 N. E. 2d 279; and *Rowe Transfer & Storage Co.* v. *International Brotherhood*, 186 Tenn. 265, 209 S. W. 2d, 35.

450

The principal case relied on by the appellants in support of the above insistence is the *Thornhill Case, supra.* This case is clearly distinguishable from the case now before us. In the *Thornhill Case* the Alabama court enjoined *all picketing,* regardless of whether or not it was peaceful or unlawful, under an Alabama statute. This was held unconstitutional by the United States Supreme Court. The court said though [310 U. S. 88, 60 S. Ct. 746]: ''We are not now concerned with picketing en masse or otherwise conducted which might occasion such imminent and aggravated danger,'' etc. There is no suggestion that picketing in support of an unlawful object could not be enjoined.

We, therefore, conclude that the injunction as issued did not violate the constitutional rights of these appellants and that the petition for contempt fully and fairly apprised them of their alleged acts in violation of said injunction.

■ Regardless of whether or not the injunction was ''irregular or erroneous'', ''it must while it continues in force be obeyed.'' 28 Am. Jur., sec. 330, p. 504. In a note to the above quoted statement numerous cases are cited as authority therefor. See also *Vanvabry* v. *Staton,* 88 Tenn. 334, 12 S. W. 786; *Weidner* v. *Friedman,* 126 Tenn. 677, 151 S. W. 56, 42 L. R. A., N. S., 1041; and *Underwood's Case,* 2 Humphrey 46, which are to the same effect. The obvious reason for this almost unanimous holding, is stated by Chancellor GIBSON as follows:

''The power to punish for contempt is one of the highest prerogatives of a court of justice; and, upon its bold and prudent exercise depend the respect, the dignity, and efficiency of courts as arbiters of human rights. The mandates of a Court of Chancery must in all cases be

obeyed, according to the spirit of the decree, promptly, faithfully and without question, or evasion. The party, upon whom the order or command of the court operates, is not allowed to speculate upon the equity of the bill, or the legality or regularity of the order or decree, or of the writ issued thereon; but his simple duty is to obey; and when he disobeys it is a duty the court owes to itself and to the public to punish him at once.''

 The contempt herein falls under the criminal class as distinguished from civil. Criminal contempt actions are those to preserve the power and vindicate the dignity of the court while civil contempt actions are those brought to enforce private rights. This distinction is very clearly shown in *State ex rel Anderson* v. *Daugherty,* 137 Tenn. 125, 191 S. W. 974.

 ''In cases involving criminal contempts the rule is that the defendant is presumed to be innocent and must be proved to be guilty beyond a reasonable doubt.'' *State ex rel Anderson* v. *Daugherty, supra.* This is the duty of the trial court. Our duty in regard to the quantum of proof is otherwise. The parties having been found guilty below must convince us that the proof preponderates against such a finding. They wholly fail in this regard.

It will serve no useful purpose for us to review the evidence pro and con on the charges against these appellants. Suffice it to say that we have very carefully and painstakenly read this large record and find ample credible evidence against each that they violated the terms and spirit of this injunction. It is true that in each instance, except as to the appellants Cooper and Stephens, that these parties took the stand and denied that they violated the injunction. On the other hand unimpeached

witnesses testify as to their acts in violation of the injunction. A question of fact was thus squarely presented to the Chancellor, and his decision of the credibility of the several witnesses whom he saw and heard, is final under the circumstances here. We, too, are convinced that he correctly found each guilty.

Much of the defense testimony was what might be called a confession and avoidance. The burden of this testimony is to the effect that these witnesses and accused were gathered in front of a restaurant, waiting on a seat therein, so that they could eat at meal time, and were not picketing or violating the terms of the injunction. Many of these witnesses heard what a particular person was accused of but denied having done or said what they were accused of. We are convinced, as was the Chancellor, that this was a mere subterfuge to allow them to congregate and while thus congregated violate the injunctive order.

■ Ordinarily "a person is not guilty of contempt in violating an injunction or restraining order unless he has, or is chargeable with, knowledge or notice of such injunction or order, but actual notice is sufficient to bind a party to the proceedings regardless of want of, or defective, service of the injunction or order." 43 C. J. S., Injunctions, sec. 261, p. 1009.

■ As heretofore said, each of these appellants, except Cooper and Stephens, took the stand as witnesses in his or her own behalf. By their testimony they either admit knowledge of the injunction or show complete knowledge thereof through their testimony in placing themselves within the terms of the injunction. We, therefore, must conclude that each had actual knowledge of the injunction and its terms.

The appellant, Cooper, did not take the stand to affirm or deny that he violated the injunction herein. It does appear in the record, by a statement of the Chancellor, that Cooper had been before the Court on two other occasions for violating this injunction. It would thus appear that unquestionably Cooper had actual knowledge of this injunction. The evidence herein shows without contradiction that he flagrantly violated this injunction. He therein showed his disrespect to the court and was clearly guilty of an unwarranted interference with the orderly and effective administration of justice for which he ought to be held in contempt.

Did Stephens have knowledge of the injunction? He unquestionably was guilty of violating the injunction in a personal fist attack on one of the employees of complainant. But before he can be held liable for violating the injunction it must be shown that he was either a party, agent, servant, employee, aider or abettor with notice of the injunction. The petition for contempt alleges that Stephens is a member of the enjoined Local. This is not denied. Notices of the injunction were posted and appeared in the local press. An officer of the Union testified that the injunction was read and discussed at meetings of the Union. Apparently all of Stephens associates had knowledge of the injunction. For days the striking members were congregated around the plant; those on strike duty were patroling various places around the plant; Stephens was present and must have seen and heard all this. In other words a Court must assume under these proven facts that Stephens had the required knowledge and notice of this injunction in the absence of his denial thereof. We would stultify ourselves if we concluded otherwise.

It is said that argument of counsel was prejudicial to Cooper and Stephens. Counsel apparently argued they were guilty because neither took the witness stand in his own defense. This was not error for many reasons. Suffice it to say that this is not a jury trial and the trial judge clearly was not influenced by this argument. He so held. Then too, the evidence was almost conclusive that they were both guilty regardless of what they said. The only redeeming feature in their favor was that they did not try to deny a thing so evident.

Other questions are made by the numerous assignments but they are without merit and do not warrant a discussion in this opinion which has already been extended too long.

It results, therefore, that the judgment of the Chancellor is affirmed in all particulars.

All concur.