KINGSPORT PRESS, INC., Appellee,

*v.*

INTERNATIONAL PRINTING PRESSMEN AND
ASSISTANTS' UNION OF NORTH AMERICA,
LOCAL UNION 336 et al., Appellants.

372 S. W. 2d 289

(*Knoxville*, September Term, 1963.)

Opinion filed November 6, 1963.

MCLELLAN & WRIGHT, Kingsport, for appellants.

PENN, HUNTER, SMITH, DAVIS, NORRIS & WADDEY, Kingsport, for appellee.

MR. JUSTICE WHITE delivered the opinion of the Court.

This is an appeal by the defendants below from an order of the chancellor overruling their motion to dismiss the original complaint and dissolve the temporary injunction issued thereon.

The defendants' motion to dismiss was based upon the averment that it appeared upon the face of the bill that the chancellor was without jurisdiction over the subject matter and that there was, on the face of the bill, a want of equity to support the injunction.

It is conceded that the chancellor correctly treated the defendants' motion like a demurrer in that it admitted the well plead averments of fact on the face of the bill. This Court so held in *Parks v. Margrave*, 157 Tenn. 316, 324, 7 S.W.2d 990 (1928).

The original bill avers that the complainant is a contract book manufacturing company, engaged in said

business in Kingsport, Tennessee, and that it has been since 1922. It avers that the main plant consists of a number of buildings bounded on the north by West Sullivan Street, on the east by Clinchfield Street, on the south by East Center Street, and on the west by Roller Street. Among these are three railroad sidings and twelve truck docks.

It avers that there are four main entrances to this main plant, two on Roller Street and one each on Sullivan and Clinchfield Streets.

It avers that it has been carrying on collective bargaining with defendant unions since the mid 1930s and that the contracts with all five unions expired on the common date of 31 January, 1963. It avers that after many unfruitful bargaining sessions the defendants called a strike for economic reasons at 6:00 o'clock, A.M., on March 11, 1963.

As set out in the appellants' brief, the bill avers that on the morning of March 11, 1963, there were 100 to 250 pickets congregated at the Roller Street entrances so as to form a solid line across all entrances on that street, on West Sullivan Street, on Clinchfield Street, and on East Center Street; that in the afternoon on the same day there were 450 pickets at the entrances on Roller Street, 13 at West Sullivan, 161 at Clinchfield, and 31 at East Center, with the effect that at shift change there was a solid line, two deep, milling around said entrances, with a total of 625 pickets; that every entrance has been blocked by mass picketing since the time the strike began, resulting in denial of access to the plant for many people; that many of its employees will not return to work because they fear personal violence; that a train making a

delivery was blocked by the massing of pickets on the tracks and their refusal to yield; that various individuals were refused passage through the picket lines to the plant; that a coca-cola truck, bread truck, and others were denied passage and the drivers were threatened and intimidated by the pickets; and in conclusion, that unless the defendants are enjoined further acts of a violent nature will occur and it will suffer irreparable injury from the effects of the intimidation, coercion, and other unlawful acts.

The defendants' motion to dismiss contends that the conduct complained of in the bill is either arguably protected or prohibited activity under the LMRA (Labor Management Relations Act of 1947), 29 U.S.C. sec. 151, so that exclusive primary jurisdiction is vested in the NLRB (National Labor Relations Board), under the preemption doctrine.

■ We recognize now, as we have in the past, that the NLRB is the exclusive and primary authority in matters of legal principle and policy concerning labor relations in interstate commerce. See *Lodge Mfg. Co. v. Gilbert,* 195 Tenn. 403, 406, 260 S.W.2d 154, 156 (1953) ; *Nashville Corp. v. United Steelworkers of America, CIO,* 187 Tenn. 444, 448-450, 215 S.W.2d 818, 820 (1948).

■ The United States Supreme Court has made it clear that the only legitimate interest of state authorities in the field of labor-management relations in interstate commerce is that of maintaining peace and order. As long as labor and management are arguing it is up to the NLRB to lay down the rules and referee or settle the argument. When the disputants begin to mix threats, intimidation, violence and other conduct which threatens

the peace and order of the community, then the state and local authorities are allowed to step in and act under their police power. Even then the local authority is limited to that which they reasonably deem necessary to maintain peace.

In *Allen-Bradley Local No. 1111, etc. v. Wisconsin Employment Relations Board,* 315 U.S. 740, 62 S.Ct. 820, 86 L.Ed. 1154 (1942), the Supreme Court upheld a cease and desist order which prohibited mass picketing, threatening employees, obstructing or interfering with the factory entrances or public streets, or roads, or sidewalks, and picketing the domicile of employees. In that case the court pointed out that prohibition of such conduct was within the traditional police power of the state and was not preempted by the National Labor Relations Act.

In *Garner v. Teamsters, etc., Union,* 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed 228 (1952), this principle is reaffirmed at 488 [346 U.S. at 488, 74 S.Ct. at 164, 98 L.Ed. 228]:

"The national Labor Management Relations Act, as we have before pointed out, leaves much to the states, though Congress has refrained from telling us how much.

      \*     \*     \*     \*     \*     \*

"Nor is this a case of mass picketing, threatening of employees, obstructing streets and highways, or picketing homes. We have held that the state still may exercise 'its historic powers over such traditionally local matters as public safety and order and the use of streets and highways.' *Allen-Bradley Local No. 1111, United Electrical Radio and Machine Workers of*

*America v. Wisconsin Employment Relations Board,* 315 U.S. 740, 749 [62 S.Ct. 820, 825, 86 L.Ed. 1154] * * * ''

If there was any doubt over the issue of the state's jurisdiction to enjoin conduct such as that averred in the instant case it was dispelled in *United Automobile, etc., Workers of America, UAW-CIO v. Wisconsin Employment Relations Board,* 351 U.S. 266, 76 S.Ct. 794, 100 L.Ed. 1162, (1956). There, Mr. Justice Reed said:

"As a general matter we have held that a State may not, in the furtherance of its public policy, enjoin conduct 'which has been made an "unfair labor practice" under the federal statutes.' * * But our post-Taft-Hartley opinions have made it clear that this general rule does not take from the States power to prevent mass picketing, violence, and overt threats of violence. The dominant interests of the State in preventing violence and property damage cannot be questioned. It is a matter of genuine local concern. Nor should the fact that a union commits a federal unfair labor practice while engaging in violent conduct prevent States from taking steps to stop the violence." 351 U.S. at 274, 76 S.Ct. at 799, 100 L.Ed. 1162.

The court once again made it clear in *Youngdahl v. Rainfair,* 355 U.S. 131, 78 S.Ct. 206, 2 L.Ed.2d 151 (1957), that a state equity court has jurisdiction to enjoin "future acts of violence, intimidation and threats of violence by the strikers and the union." 335 U.S. at 139, 78 S.Ct. at 211, 2 L.Ed.2d 151.

In *Youngdahl v. Rainfair,* supra, the court showed that it would not tolerate an excessive exercise of the equity courts' discretion so as to enjoin all picketing, including

that which was peaceful, in a case where this was not absolutely necessary.

██ In the instant case it is clear that the conduct which the chancellor enjoined is within the jurisdiction of the State under its police power and within the discretion of the chancellor in this case.

In essence, the matters enjoined were violence, abuse, threats, coercion, interference with ingress and egress, mass obstruction of entrances and mass picketing. This is not one of those cases where there is a blanket injunction against all picketing peaceful or otherwise, or, in fact, against any conduct that is lawful. Nor is it a case where the state court is using some subterfuge to interfere and regulate in the preempted area of labor relations in interstate commerce.

The facts are not in issue because, for the purposes of this appeal, they are admitted. Only their legal sufficiency to sustain the chancellor's assumption of jurisdiction to issue a temporary injunction is at issue. Under the federal law as set out supra, the chancellor had jurisdiction.

The jurisdictional question here involved is not one of first impression in the State. This Court has considered the determinative principles on several occasions. See *Lodge Mfg. Co. v. Gilbert,* 195 Tenn. 403, 406-408, 260, S.W.2d 154, 156 (1953); *Nashville Corp. v. United Steelworkers of America, CIO,* 187 Tenn. 444, 448-450, 215 S.W.2d 818, 820 (1948).

Since we have determined that the chancellor had jurisdiction we must overrule the defendants' assignment

of error and affirm the order of the chancellor in overruling the defendants' motion to dismiss.

BURNETT, CHIEF JUSTICE, DYER and HOLMES, JUSTICES, and CLEMENT, SPECIAL JUSTICE, concur.