IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2025 Session

## NIKKI SIXX v. VANESSA CLARK

**Appeal from the Fourth Circuit Court for Knox County**
**No. 152051            Gregory S. McMillan, Judge**
_____

**No. E2024-00403-COA-R3-CV**
_____

This case involves a petition for criminal contempt filed by the petitioner, Nikki Sixx, against the respondent, Vanessa Clark, concerning Ms. Clark's alleged violations of multiple orders of protection. The trial court found Ms. Clark guilty of 100 counts of contempt, sentencing her to 300 days in jail and imposing $5,000 in fines. Ms. Clark has appealed. As a threshold matter, we determine that this Court lacks subject matter jurisdiction to consider Ms. Clark's challenges to the validity and scope of the underlying orders of protection from which no appeal was timely filed. In addition, we conclude that Ms. Clark has waived any challenges to her bond conditions by failing to comply with the requirements of Tennessee Rule of Appellate Procedure 8. Regarding the trial court's contempt findings, upon our thorough review of the record, we modify the trial court's judgment in part, vacating the contempt finding regarding count 7 and subtracting count 43, which was found not to constitute a violation of the order of protection, from the trial court's total. We also reduce Ms. Clark's sentence by one day, awarding her the appropriate pretrial jail credit. Accordingly, the judgment is modified to reflect a total of 98 counts of contempt. These modifications also require that the judgment reflect total fines of $4,900 and a sentence of 293 days. We affirm the trial court's judgment in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Fourth Circuit Court Affirmed in Part, Vacated in Part, Modified in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and KRISTI M. DAVIS, J., joined.

Erika J. Blalock, Knoxville, Tennessee, for the appellant, Vanessa Clark.

Wade V. Davies, Knoxville, Tennessee, for the appellee, Nikki Sixx.[1]

---

[1] Attorneys A. Sasha Frid and Adam M. Agatston from California are also listed as counsel for Mr. Sixx in his appellate brief, along with the statement: "*Pro Hac Vice* Applications Forthcoming." We note that no

**OPINION**

## I. Factual and Procedural History

Mr. Sixx is a celebrity musician and co-founder of the rock band, Mötley Crüe. Mr. Sixx filed a petition for an order of protection against Ms. Clark in the Knox County Fourth Circuit Court ("trial court") on July 16, 2021.[2] In his petition, Mr. Sixx averred that Ms. Clark had made numerous social media posts concerning him, his wife, and his young daughter, many of which contained photographs of his family along with disparaging or threatening comments. Several posts also included "hashtags" related to Mr. Sixx, his wife, his daughter, and Mötley Crüe.[3] Mr. Sixx, who resides in another state, asserted that although he had never met Ms. Clark or communicated with her in any way, she had posted that she and Mr. Sixx were "twin flames" and "soulmates" and had stalked him via the internet.

Mr. Sixx attached pictures of some of Ms. Clark's threatening posts to the petition, along with a declaration from the private investigator that Mr. Sixx had hired to investigate the posts. The investigator, Bradley Pfanner, declared that he had been requested to investigate the Instagram posts made by "@rockettrollvantasy." He stated that he had been able to conclude that Ms. Clark was the author of the account because: (1) there were self-identifying photographs on the account, (2) there were matching photographs posted to other social media accounts that belonged to Ms. Clark, (3) videos posted to the account showed the account owner's residence as the same residence where Ms. Clark's car is registered, (4) references from the account named the account owner as "Vanessa," and (5) the unmasked digits of the phone number linked to the Instagram account matched Ms. Clark's registered phone number.

On July 29, 2021, the trial court entered an order of protection ("2021 Order") prohibiting Ms. Clark from having any contact or communication with Mr. Sixx or his child. The expiration date of the order was set as July 28, 2022. The 2021 Order reflects that during the hearing concerning entry of the order, Ms. Clark admitted that she was the

---

such applications were filed in this case, although these attorneys were granted *pro hac vice* admission in a separate appeal involving these parties.

[2] Multiple variations of Ms. Clark's last name appear in the pleadings filed in this matter, including "Hensley," "Crews," and "Cruze." However, because her last name was listed as "Clark" in the petition, we have referred to her using this surname throughout this Opinion to avoid confusion.

[3] "Hashtag" is defined as a "word or phrase preceded by the symbol # that classifies or categorizes the accompanying text." *See* Merriam-Webster Online Dictionary (2025) (www.merriam-webster.com/dictionary/hashtag).

source of the posts attached as exhibits to the petition. The record demonstrates that no appeal was taken from this order.

On September 23, 2022, Mr. Sixx filed a second petition for an order of protection against Ms. Clark. In this petition, he alleged that in April 2022, Ms. Clark had begun posting on YouTube using the username, "Grant L.," and on Instagram using the handle, "brockettqueen." Mr. Sixx averred that in these posts, Ms. Clark had claimed, *inter alia*, that (1) Mr. Sixx and his wife had attempted to murder their own daughter, (2) Mr. Sixx was a pedophile, (3) Mr. Sixx was obsessed with Ms. Clark and that the obsession made Mr. Sixx's wife jealous, (4) Mr. Sixx had obtained the prior order of protection through corrupt means, and (5) Mr. Sixx had been stalking Ms. Clark and was attempting to kill her. Additionally, the posts contained hashtags referring to Mr. Sixx's bandmates and bands with whom Mr. Sixx was touring, as well as the hashtags, "karmaisreal" and "whatgoesaroundcomesaround." Mr. Sixx claimed that following entry of the 2021 Order, the posts' scope broadened to include private investigator Pfanner, Mr. Sixx's attorney, and the trial court judge. In the petition, Mr. Sixx asserted that Ms. Clark had made nineteen YouTube videos and seventy-nine Instagram posts about him and his family before the 2021 Order expired.

Mr. Sixx averred that on the day the 2021 Order was to expire, Ms. Clark posted the expiration date of the order, commenting that she "can contact anybody if I want . . . #timesup." She subsequently resumed posting about Mr. Sixx and his family, adding hashtags that would ensure that Mr. Sixx saw the posts. In addition, in several posts, Ms. Clark claimed that the trial court had allowed her to keep her guns because Mr. Sixx was a threat to her life.

On October 20, 2022, the trial court conducted a hearing regarding entry of a second order of protection. During the hearing, Mr. Sixx testified that he had become aware of Ms. Clark's posts when he "click[ed ] on" the various hashtags relating to him, his band, his tour, and his bandmates. Mr. Sixx explained that he did not know Ms. Clark and had never communicated with her. According to Mr. Sixx, he had used the Instagram handle, "nikkisixxpixx," for several years, and he stated that if someone hashtagged that moniker or his name, he would receive the communications. Mr. Sixx further stated that Ms. Clark's posts had caused him and his family to experience great fear.

The trial court entered an order of protection that same date ("2022 Order"). This order prohibited Ms. Clark from having contact and communication with Mr. Sixx. Specifically, the order contained the judge's handwritten directive that:

> [Ms. Clark] shall not post using hashtags related to #nikksixxpixx, nickisixx, motley crue, the names of motley crue's past or current band mates, or any of their albums and or commercial activities with any post concerning Mr.

Sixx, his wife, or children.  [Ms. Clark] shall not post in any electronic media about Mr. Sixx.

Although the 2022 Order contemplated requiring Ms. Clark to attend a domestic violence intervention group, it reserved the issue to determine whether the services were available in her area.  The expiration date of the order was set as October 19, 2023.  The record demonstrates that no appeal was taken from this order.

Meanwhile, in September 2022, Mr. Sixx filed a motion requesting that Ms. Clark be held in contempt for violating the 2021 Order.  In support, Mr. Sixx cited the numerous threatening posts that Ms. Clark had made prior to expiration of the 2021 Order, as detailed in his second petition for an order of protection.  Mr. Sixx subsequently filed a "Motion to Require Respondent to Participate in Counseling," averring that Ms. Clark had resumed posting about Mr. Sixx, his family, his counsel, the court, and the court's clerk since entry of the latest order of protection.  On August 29, 2023, Mr. Sixx filed a motion seeking to extend the 2022 Order.

In September 2023, Mr. Sixx again requested that the court adjudicate Ms. Clark to be in contempt of court for ten alleged violations of the 2022 Order.  Mr. Sixx attached copies of Ms. Clark's posts to his petition.  Meanwhile, the trial court issued an amended order of protection ("Amended Order") in September 2023 to ensure that the 2022 Order would remain in effect until the motion to extend could be heard.  In the Amended Order, the court directed Ms. Clark to attend a full course of a "Domestic Violence Intervention Group for Women."

On October 20, 2023, the trial court conducted a hearing concerning Mr. Sixx's motion to extend the order of protection.  During that hearing, Mr. Sixx testified that Ms. Clark had continued to author harassing social media posts in violation of the 2022 Order.  Mr. Sixx explained that these posts had caused him to continue to fear for his safety and the safety of his family, including his older children.  The court issued another order of protection that same day ("2023 Order") against Ms. Clark.  In that order, the court found that Ms. Clark had continued to harass Mr. Sixx and that there was no evidence that Ms. Clark had attended the mandated counseling.  Accordingly, the court ordered that Ms. Clark "must not come about [Mr. Sixx] . . . for any purpose and must not contact [him], either directly or indirectly, by phone, email, messages, text messages, mail or any other type of communication or contact."  In addition, the court again mandated counseling for Ms. Clark.  The record establishes that no appeal was taken from this order.

On the same date, the trial court entered an order of attachment directing Ms. Clark's arrest.  In support, the court noted that Ms. Clark had been summoned to court on that date and had failed to attend.  The court also ordered that Ms. Clark attend the subsequent show cause hearing and directed that she post a $2,500 cash bond to secure her release and a

$1,500 bond to secure her appearance. Ms. Clark was arrested on November 8, 2023, and released the following day.

On December 1, 2023, Mr. Sixx filed a supplement to his September 2023 contempt petition, averring that Ms. Clark had continued to intentionally violate the orders of protection entered against her. Mr. Sixx alleged 106 additional counts of contempt, including that Ms. Clark had failed to attend the mandated counseling, had failed to appear at the hearing concerning the most recent order of protection, and had initiated over one hundred social media posts that referenced or used a hashtag relating to Mr. Sixx, his family, or his counsel in a threatening and "deranged" manner. These posts were attached to and enumerated as separate counts in the supplement.

On December 27, 2023, the trial court conducted a show cause hearing relative to the contempt petitions. Following that hearing, both parties filed proposed findings of fact and conclusions of law. In her proposed findings and conclusions, Ms. Clark suggested that the use of hashtags in a social media post did not constitute communication with a specific person because such an act would not notify anyone of the use of the hashtag even if the hashtag utilized a particular person's username. Instead, Ms. Clark asserted that hashtags were "merely a way to categorize posts or call attention to a specific topic." She further urged that Mr. Sixx only became aware of the posts with hashtags if someone he knew forwarded such posts to him or if he specifically monitored Ms. Clark's posts. In addition, Ms. Clark averred that in the 2023 Order, the trial court had failed to specifically prohibit Ms. Clark's use of hashtags relating to Mr. Sixx.

Mr. Sixx filed a response to Ms. Clark's proposed findings and conclusions, specifically stating in part:

> [Ms. Clark] claims that her posts hashtagging Mr. Sixx did not violate the October 2023 order of protection because hashtagging a person does not constitute contact with him. This contravenes the Court's earlier findings. In entering the 2022 Order, the Court explicitly held that [Ms. Clark's] posts hashtagging Mr. Sixx and people related to him constituted contact. In entering another order of protection in October 2023, the Court again found that [Ms. Clark's] online posts about and hashtagging Mr. Sixx and his counsel constituted harassment. [Ms. Clark] has never challenged either finding, which were and remain correct.

On February 23, 2024, the trial court entered an order regarding the show cause hearing. The court found that counts 2 through 9 and 14 through 32 concerned Instagram posts that Ms. Clark had made about Mr. Sixx and his family. The court further determined that, with the exception of counts 18, 20, 21, and 30, these posts constituted violations of the 2022 Order. According to the court, counts 11 and 12 concerned Ms. Clark's failure to verify compliance with the court's order that she attend counseling. The court found that

- 5 -

although Ms. Clark had failed to appear and verify her attendance, there was no proof that her failure was intentional. Regarding count 13, which addressed Ms. Clark's failure to attend the trial court's October 20, 2023 hearing, the court found that Ms. Clark's failure to attend was willful predicated on her social media post demonstrating that she had been served with a summons and claiming that the court could not prosecute the action because she no longer resided in Knox County.

Turning to the remaining allegations of contempt regarding violations of the 2023 Order, the trial court acknowledged that the "provisions of the order entered on October 20, 2023 are less extensive than those contained in the order entered the year before," noting that in the 2023 Order, the court had not included any additional specific prohibitions other than the directive that Ms. Clark have no contact with Mr. Sixx. The court further elucidated:

> [Mr. Sixx] urges this Court to hold that the prohibitions specifically set forth within the previous order carry over by inference. The Court declines to hold believing that the order must be clear and unambiguous. Incorporating terms by inference, rather than by specific reference, is not clear and unambiguous. Thus, only attempts [] by [Ms. Clark] to come about or communicate[,] directly or indirectly, with [Mr. Sixx] may be punished under the Order entered October 20, 2023.

Accordingly, the trial court found that counts 33 through 37 did not constitute violations of the 2023 Order. However, the court did find that counts 38 through 115, aside from counts 42, 43, and 45, constituted violations of the 2023 Order. The court ultimately concluded that of the 115 alleged violations, Ms. Clark was guilty of criminal contempt respecting all counts except counts 1, 10, 11, 12, 18, 20, 21, 30, 33, 34, 35, 36, 37, 42, and 45.[4]

As sanctions, the trial court punished Ms. Clark for 100 counts of criminal contempt, imposing a fine of $50.00 per violation, for a total of $5,000, and sentencing her to three days of incarceration per violation, for a total of 300 days, with 270 days held "in abeyance pending [Ms. Clark's] compliance with the Orders of this Court." Furthermore, the court found that the order of protection should be extended for five years and imposed a $2,500 bond for the five-year term. Ms. Clark's notice of appeal from this order was filed on March 19, 2024. Meanwhile, on February 23, 2024, the trial court entered a separate order of protection spanning a term of five years.

---

[4] Although Mr. Sixx's December supplement to his contempt petition references a count numbered 116, this count is not addressed in the trial court's order. We note that the trial court in its analysis also found that count 43 was not a violation but failed to list it as an unproven count in its concluding paragraph.

On March 6, 2024, Ms. Clark filed a motion seeking an order setting the conditions of her release pending appeal. On that same day, Mr. Sixx filed an emergency petition requesting that the trial court issue a warrant for Ms. Clark's arrest and enter an order requiring her to serve the remainder of her sentence of incarceration due to her continuing violations of the court's orders. The following day, Mr. Sixx filed a motion asking the court to deny bond. Mr. Sixx subsequently initiated a show cause petition, alleging numerous violations of the most recent order of protection and attaching copies of Ms. Clark's social media posts. In turn, the trial court set a hearing regarding the issue of whether to set bond pending appeal, and in doing so, the court ordered that Ms. Clark "shall not make any posts in violation of the Court's most recent order finding her in contempt and also she shall not make any posts in violation of the five-year Order of Protection filed February 23, 2024." On April 5, 2024, the trial court entered a mittimus to jail with regard to Ms. Clark, stating that she would be detained until she posted a bond of $5,000 or until further order of the court. Ms. Clark posted bond that same day.

Mr. Sixx subsequently filed a motion requesting that the trial court revoke Ms. Clark's bond and issue a warrant for her arrest by reason of Ms. Clark's continuing social media posts. On May 7, 2024, Mr. Sixx filed a supplement to this motion, chronicling further posts in violation of the most recent order of protection.

On May 8, 2024, the trial court entered an order adding as conditions to Ms. Clark's bond that Ms. Clark "[m]ay not access or post on any of her current social media accounts or create any new social media accounts during the pendency of this appeal." On the subsequent day, the trial court entered an order of attachment, wherein the court ordered that Ms. Clark would be held without bond pending further order of the court. The court entered a separate order the same day, finding that Ms. Clark had failed to appear for the hearing on Mr. Sixx's "Motion to Revoke Respondent's Bond and Issue a Warrant for Her Arrest" despite having received actual notice of the hearing. The court noted that this was the second time that Ms. Clark had failed to appear for a court hearing. The court therefore ordered that Ms. Clark be arrested and held without bail until further order from the court. On May 23, 2024, the court allowed Ms. Clark to be released on her own recognizance.

## II. Issues Presented

Ms. Clark has presented the following issues for review, which we have restated slightly:

1.    Whether the trial court violated Ms. Clark's First Amendment right to free speech in the 2022 Order and in setting Ms. Clark's bond conditions.

2.      Whether the trial court erred in restraining Ms. Clark from posting regarding other parties or entities who did not petition for an order of protection.

3.      Whether the trial court erred in holding Ms. Clark in criminal contempt due to her social media posts.

Mr. Sixx has raised the following additional issues:

4.      Whether Ms. Clark's challenges to her criminal contempt convictions, which question the validity of the 2022 Order and 2023 Order, must fail because those orders were not timely appealed.

5.      Whether Ms. Clark's challenges to her bond restrictions should be dismissed because they were not properly raised.

## III. Standard of Review

A trial court's factual findings are accorded a presumption of correctness on appeal and will not be overturned unless the evidence preponderates against them. *See Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). Questions of law are reviewed *de novo* with no "presumption of correctness afforded to the lower court's conclusions of law." *Case v. Wilmington Trust, N.A.*, 703 S.W.3d 274, 281 (Tenn. 2024) (citing *Blair v. Brownson*, 197 S.W.3d 681, 683 (Tenn. 2006).

As this Court has previously explained regarding criminal contempt:

> The power to punish for contempt is inherent in the courts of justice. *Winfree v. State*, 175 Tenn. 427, 431, 135 S.W.2d 454, 455 (1940); Tenn. Code Ann. §§ 16-1-103 & 29-9-101 (1980). It is one of the tools available to the courts to maintain the integrity of their orders. *State v. Sammons*, 656 S.W.2d 862, 869 (Tenn. Crim. App. 1982). Violation of a court's lawful orders is contemptuous conduct. Persons who do so may be found guilty of criminal contempt and, in the absence of a specific statute, may be imprisoned for ten days and fined $50 or both. *Sitton v. Finley*, 743 S.W.2d 933, 935 (Tenn. Crim. App. 1987); *State Bd. of Dental Examiners v. Talley*, 185 Tenn. 83, 87, 203 S.W.2d 364, 366 (1947); Tenn. Code Ann. §§ 29-9-102(3), -103 (1980).
>
> Criminal contempt convictions are punitive in character, and their primary purpose is to vindicate the court's authority. *Gunn v. Southern Bell Tel. & Tel. Co.*, 201 Tenn. 38, 41, 296 S.W.2d 843, 844 (1956); *Garrett v. Forest Lawn Memorial Gardens*, 588 S.W.2d 309, 315 (Tenn. Ct. App.

1979).  Persons charged with criminal contempt are presumed innocent, and the State must prove them guilty beyond a reasonable doubt.  *Nashville Corp. v. United Steelworkers of Am.*, 187 Tenn. 444, 451, 215 S.W.2d 818, 821 (1948); *O'Brien v. State ex rel. Bibb*, 26 Tenn. App. 270, 272, 170 S.W.2d 931, 932 (1942).

*Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993).

However, "[p]ersons convicted of criminal contempt lose their presumption of innocence" and "bear the burden of overcoming their presumption of guilt on appeal."  *Id.* (citing *Robinson v. Air Draulics Eng'g Co.*, 377 S.W.2d 908, 912 (Tenn. 1964); *Nuclear Fuel Servs., Inc. v. Local No. 3-677*, 719 S.W.2d 550, 552 (Tenn. Crim. App. 1986)).  As our Supreme Court has explained:

When the sufficiency of the evidence is challenged [in a criminal contempt action], our standard of review is whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996).  The prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it.  *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003).  Questions regarding the credibility of witnesses, the weight and value of the evidence, and any factual issues raised by the evidence are resolved by the trier of fact.  *Id.*

*Cottingham v. Cottingham*, 193 S.W.3d 531, 538 (Tenn. 2006).

Accordingly, appellate courts "do not review the evidence in a light favorable to the accused and will reverse criminal contempt convictions only when the evidence is insufficient to support the trier-of-fact's finding of contempt beyond a reasonable doubt." *Thigpen*, 874 S.W.2d at 53 (citing Tenn. R. App. 13 (e)).  A trial court's decision to impose contempt sanctions is reviewed for an abuse of discretion.  *Moody v. Hutchinson*, 159 S.W.3d 15, 25 (Tenn. Ct. App. 2004).  "[R]eviewing courts will set aside a discretionary decision only when the court that made the decision applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

IV.  Challenges to Orders of Protection

In this appeal, Ms. Clark challenges her criminal contempt convictions primarily by addressing the constitutionality and scope of the underlying orders of protection. Therefore, as a threshold matter, we must first determine whether this Court maintains subject matter jurisdiction to review any issue presented regarding the validity of the underlying orders.

### A. First Amendment Claims

Ms. Clark's first issue questions whether the terms of the 2022 Order violated her constitutional right to free speech. As a component of her argument concerning this issue, Ms. Clark also asserts that the trial court erred by concluding in the 2022 Order that her use of hashtags referencing Mr. Sixx constituted prohibited contact. We reiterate that this order of protection was issued on October 20, 2022. However, Ms. Clark did not file a notice of appeal until March 19, 2024, well after the thirty-day period for appealing the 2022 Order had passed.

Rule 4(a) of the Tennessee Rules of Appellate Procedure states, *inter alia*, that "the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from . . . ." This includes entry of an order of protection. *See*, *e.g.*, *Daugherty ex rel Chloe v. Daugherty*, No. E2018-01013-COA-R3-CV, 2019 WL 81592, at *1 (Tenn. Ct. App. Jan. 3, 2019). The thirty-day time limitation is jurisdictional and mandatory in civil cases. *See Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *First Nat'l Bank of Polk Cnty. v. Goss*, 912 S.W.2d 147, 148 (Tenn. Ct. App. 2005). Moreover, this Court has no authority to expand or waive the thirty-day time limitation. *See* Tenn. R. App. P. 2, 21(b); *see also First Nat'l Bank*, 912 S.W.2d at 148. "[I]f the notice of appeal is untimely, the Court of Appeals lacks subject matter jurisdiction over the appeal." *Ball v. McDowell*, 288 S.W.3d 833, 836 (Tenn. 2009). Consequently, because Ms. Clark's first notice of appeal was filed on March 19, 2024, this Court lacks subject matter jurisdiction to rule on the validity of the 2022 Order. Moreover, to the extent that Ms. Clark asserts a similar argument regarding the validity of the 2023 Order, we also lack subject matter jurisdiction to consider that issue due to Ms. Clark's failure to file a timely notice of appeal.

### B. Scope of the Orders of Protection

Ms. Clark next propounds that, pursuant to Tennessee Code Annotated § 36-3-606, the orders of protection were impermissibly broad because the orders prohibited her from posting about parties and entities who did not seek an order of protection, including, *inter alia*, Mr. Sixx's wife, child, and bandmates. Ms. Clark presents this argument with reference to the orders entered in October 2022, September 2023, October 2023, and

February 2024.  As reviewed above, however, Ms. Clark's first notice of appeal was filed on March 19, 2024.  Accordingly, the only order of protection from which Ms. Clark filed a timely notice of appeal was the five-year order entered on February 23, 2024.  This Court lacks subject matter jurisdiction to consider the scope of the other orders due to Ms. Clark's failure to timely appeal from those orders.

With respect to the order of protection entered on February 23, 2024, we note that this order solely references Mr. Sixx and contains no prohibitions concerning third parties such as Mr. Sixx's wife, child, or bandmates.  We therefore determine this issue to be without merit.

## V.  Bond Conditions

Ms. Clark asserts that the trial court violated her First Amendment right to free speech when it imposed bond conditions through its May 2024 order prohibiting her from creating social media posts or new social media accounts.  Tennessee Rule of Appellate Procedure 8(a) addresses bond conditions, providing that after being convicted, a "defendant may obtain review of an order entered by a trial court from which an appeal lies to the Supreme Court or Court of Criminal Appeals granting, denying, setting or altering conditions of defendant's release."  Tenn. R. App. P. 8(a).[5]  To obtain review "[a]fter conviction and after the action is pending on appeal, a written motion may be made either in the trial court in which judgment was entered or in the appellate court to which the appeal has been taken."  *Id.*

Failure to comply with Rule 8 amounts to a waiver of the issue on appeal.  *See State v. Wright*, 836 S.W.2d 130, 136 (Tenn. Crim. App. 1992); *State v. Jackson*, No. M2014-02039-CCA-R3-CD, 2016 WL 3022745, at *20 (Tenn. Crim. App. May 18, 2016) (noting that any challenges to the appeal bond were waived because the defendant had failed to properly raise the issue by written motion as required by Rule 8); *State v. Johnston*, No. E2002-02028-CCA-R3-CD, 2003 WL 23094414, at *7 (Tenn. Crim. App. Dec. 30, 2003) (determining that any issue concerning the appeal bond was waived because, *inter alia*, the defendant had failed to raise the issue by filing a written motion for review in either the trial court or the court hearing the appeal as required by Rule 8).  Here, the record is void of a written motion for review of Ms. Clark's bond conditions filed in the trial court.  Likewise, Ms. Clark has failed to file a written motion for review in this Court.  Accordingly, Ms. Clark has waived any issue regarding the bond conditions imposed by the trial court.

---

[5] Tennessee Rule of Appellate Procedure 8(a) has previously been utilized with regard to conditions of release and denial of bail in cases of criminal contempt appealed to this Court.  *See Rose v. Malone*, No. M2022-01261-COA-R3-CV, 2025 WL 657732, at *28 n.16 (Tenn. Ct. App. Feb. 27, 2025) (noting that this Court granted a Rule 8(a) motion after the trial court denied the contemnor bail during criminal contempt proceedings).

## VI. Validity of the Contempt Convictions

Ms. Clark argues that her criminal contempt convictions based on the 2022 Order and the 2023 Order were invalid because those orders were ambiguous. Additionally, Ms. Clark contends that the trial court miscalculated the number of contempt counts, inappropriately concluded that "pinning" a post equated to republishing it, and improperly punished her for contempt for her failure to appear in court in October 2023.

As our Supreme Court has explained, criminal contempt claims have four essential elements. *See Konvalinka*, 249 S.W.3d at 354; *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011) (noting that the civil contempt elements set forth in *Konvalinka* apply equally to criminal contempt proceedings other than the standard for reviewing the sufficiency of the evidence). The *Konvalinka* Court elucidated:

> First, the order alleged to have been violated must be "lawful." Second, the order alleged to have been violated must be clear, specific, and unambiguous. Third, the person alleged to have violated the order must have actually disobeyed or otherwise resisted the order. Fourth, the person's violation of the order must be "willful."

*Konvalinka*, 249 S.W.3d at 354-55 (footnotes omitted).

Regarding the first element, our Supreme Court has clarified that a "lawful order is one issued by a court with jurisdiction over both the subject matter of the case and the parties." *Id.* at 355. Here, Ms. Clark does not argue that the trial court lacked jurisdiction over her or the subject matter. Ergo, there is no dispute that the orders of protection were lawful.

For her remaining arguments, Ms. Clark contends that (1) the 2022 and 2023 Orders were not "clear, specific, and unambiguous"; (2) the trial court miscalculated the total number of contempt violations; (3) some of the conduct for which she was found in contempt did not constitute a violation of the orders; (4) her failure to appear for court had already been punished; and (5) she should be awarded pretrial credit for her time already spent in confinement resulting from her failure to appear. We will address each of Ms. Clark's arguments in turn.

### A. Ambiguity of the Orders

"A person may not be held in . . . contempt for violating an order unless the order expressly and precisely spells out the details of compliance in a way that will enable reasonable persons to know exactly what actions are required or forbidden." *Konvalinka*, 249 S.W.3d at 355. Accordingly, orders that are vague or ambiguous and "susceptible to

- 12 -

more than one reasonable interpretation cannot support a finding of . . . contempt." *Id*. at 356.

"Orders alleged to have been violated should be construed using an objective standard that takes into account both the language of the order and the circumstances surrounding the issuance of the order, including the audience to whom the order is addressed." *Id.* Moreover, "[o]rders need not be 'full of superfluous terms and specifications adequate to counter any flight of fancy a contemnor may imagine in order to declare it vague.'" *Id.* (quoting *Ex parte Blasingame*, 748 S.W.2d 444, 446 (Tex. 1988)). "Determining whether an order is sufficiently free from ambiguity to be enforced in a contempt proceeding is a legal inquiry that is subject to de novo review." *Id.*

### 1. 2022 Order and Amended Order

Ms. Clark contends that counts 17, 19, 22 through 29, 31, and 32 were covered by the Amended Order rather than the 2022 Order. She further argues that because the trial court in its Amended Order merely referred to the terms of the 2022 Order, the Amended Order did not expressly and precisely spell out its terms of compliance. Upon review, we agree with the trial court that the challenged counts were all related to posts that Ms. Clark made before expiration of the 2022 Order; consequently, the terms of that order would control.

The 2022 Order expired on October 19, 2023. The post referred to in count 17 was posted on September 29, 2023. The relevant post in count 19 was posted on October 2, 2023. The posts constituting counts 22 through 29 were posted between October 5, 2023, and October 12, 2023. Counts 31 and 32 related to posts made on October 14, 2023, and October 15, 2023, respectively. Each of these posts were made before the expiration of the 2022 Order on October 19, 2023, and were therefore governed by the 2022 Order.

In the 2022 Order, the trial court directed:

> [Ms. Clark] shall not post using hashtags related to #NikkSixxPixx, NickiSixx, motley crue, the names of motley crue's past or current band mates, or any of their albums and or commercial activities with any post concerning Mr. Sixx, his wife, or children. [Ms. Clark] shall not post in any electronic media about Mr. Sixx.

For counts 17, 22, 25, and 29, Ms. Clark contends that there was an ambiguity even under the 2022 Order.[6] The posts constituting counts 17 and 29 contain pictures of

---

[6] Ms. Clark also argues that counts 26, 31, and 32 should not have been considered a violation of the 2022 Order because the relevant posts contained pictures of pleadings filed in this case. She claims that because the pleadings are public records, her act of posting pictures of the pleadings should not constitute violations

- 13 -

pleadings filed in this matter displaying Mr. Sixx's name or signature as well as Ms. Clark's own reference to "N6." Likewise, the posts constituting counts 22 and 25 contain references to "N6." Ms. Clark argues that the 2022 Order is vague because it did not expressly prohibit references to "N6" or posting pictures of Mr. Sixx's name. We note, however, that the 2022 Order expressly prohibits Ms. Clark from posting "in any electronic media about Mr. Sixx."

Ms. Clark appears to assert that the order's breadth somehow renders it vague. We disagree. The plain language of the order prohibits Ms. Clark from making any posts about Mr. Sixx in electronic media regardless of the manner in which she refers to Mr. Sixx or uses his name. Therefore, we conclude that a reasonable person would understand that this order prohibited Ms. Clark's conduct as exhibited in counts 17, 22, 25, and 29. We emphasize that an order is not vague or ambiguous simply because it is not "full of superfluous terms and specifications adequate to counter any flight of fancy a contemner may imagine in order to declare it vague." *Konvalinka*, 249 S.W.3d at 356. Accordingly, the trial court was not required to list every conceivable method of referring to Mr. Sixx to effectively prohibit Ms. Clark from posting about him.

Counts 19, 23, 24, 26 through 28, 31, and 32 were all based on posts that contained Mr. Sixx's full name. Some of the posts also contained the "N6" reference, his wife's full name, or his signature. For the above-stated reasons, we agree with the trial court that these posts constituted violations of the 2022 Order as well.

Ms. Clark contends that there is another ambiguity in the 2022 Order because the handwritten directive in the order prohibits the use of the hashtags, "#NikkSixxPixx" (with a missing "i" in "Nikki") and "#NickiSixx" (with "Nikki" misspelled as "Nicki" with a "c"). Although the 2022 Order does contain these misspellings, we conclude that the balance of the order resolves any ambiguity regarding the order's intent. In addition to the specifically proscribed hashtags, the 2022 Order prohibited the use of hashtags "related to . . . the names of motley crue's past or current band mates, or any of their albums and or commercial activities with any post concerning Mr. Sixx, his wife, or children." Mr. Sixx is clearly a Mötley Crüe band member, and the posts with hashtags containing his name were undisputedly "concerning Mr. Sixx." More importantly, the 2022 Order specifically and expressly stated that Ms. Clark "shall not post in any electronic media about Mr. Sixx." We therefore find that the 2022 Order was unambiguous despite any minor typographical errors in the delineated hashtags. *See, e.g., Elliott v. Morrow*, No. E2013-00692-COA-R3-CV, 2013 WL 6909424, at *5 (Tenn. Ct. App. Dec. 23, 2013) (citing *In re Caleb L.C.*, 362 S.W.3d 581, 598 (Tenn. Ct. App. 2011) (determining that typographical errors "in the

_of the 2022 Order. Ms. Clark cites no authority for this contention. We note that the 2022 Order expressly prohibited Ms. Clark from posting about Mr. Sixx in electronic media and that Ms. Clark's posted pictures clearly contain Mr. Sixx's name or signature. We therefore find this argument unavailing._

trial court's detailed judgment did not affect the overall clarity of the judgment or this Court's analysis.")).

Moreover, other provisions of the 2022 Order prohibited Ms. Clark's conduct as well. The order prohibited Ms. Clark from contacting Mr. Sixx "either directly or indirectly, by phone, email, messages, text messages, mail or any other type of communication or contact." Mr. Sixx testified during the October 2022 hearing that he had received communications related to use of the above-described hashtags, and Ms. Clark was present for that hearing. In the 2022 Order, the trial court found that Ms. Clark "knew from a previous trial that [Mr. Sixx] receives messages posted to #NikkiSixx and/or #NikkiSixxPixx." Moreover, as this Court has previously determined, social media posts directed at a particular person can constitute contact with that person even if the posts were made on the poster's own page. *Purifoy v. Mafa*, 556 S.W.3d 170, 190 (Tenn. Ct. App. 2017) (finding that public Facebook "rants" directed to the victim constituted conduct despite being posted on the poster's own page). Accordingly, there is no ambiguity regarding whether Ms. Clark was prohibited from making posts with the hashtags "#NikkiSixxPixx" or "#NikkiSixx" as alleged in counts 5 and 9.

### 2. 2023 Order

Ms. Clark claims that certain counts that fall under the 2023 Order—namely counts 38 through 41, 44, and 46 through 115—are not violations of the order because these posts merely contain hashtags relating to Mr. Sixx or his band. In support, Ms. Clark asserts that the 2023 Order did not explicitly proscribe the use of hashtags as the 2022 Order did. She further advances that because the 2023 Order failed to specify a ban on hashtags, she could reasonably believe that she was free to resume her use of the hashtags. She contends that, notwithstanding the order's provision that Ms. Clark not contact Mr. Sixx directly or indirectly, a reasonable person would find that the removal of the hashtag provision would permit the resumption of Ms. Clark's use of hashtags.

Ms. Clark's contention ignores the entire context of this case. The trial court found in the 2022 Order that Ms. Clark knew that Mr. Sixx received messages posted to the hashtag, "#NikkiSixx," and it also found that she used the hashtag as a means of communicating with Mr. Sixx once the initial order of protection expired. We have previously noted that the evidence supported these findings. Moreover, this Court is not writing on a blank slate regarding the treatment of social media posts as contact or communication. *See Purifoy*, 556 S.W.3d at 190. In fact, the *Purifoy* Court addressed a similar issue. In that case, the respondent was accused of stalking Ms. Purifoy because, in part, he was routinely posting "rants" directed at Ms. Purifoy on his own personal Facebook page. *Id.* at 188. The respondent also posted pictures of Ms. Purifoy and utilized her full name. *Id.*

As part of the stalking analysis, the *Purifoy* Court was tasked with determining whether the respondent's repeated Facebook posts constituted "unconsented contact." *Id.* at 189. The Court concluded that the posts did constitute contact even though there was no indication that the respondent had posted the messages on Ms. Purifoy's page, tagged her, or taken any other steps that would notify her of the messages. *Id.* Instead, Ms. Purifoy had been made aware of the respondent's publicly available posts because her colleagues had informed her of them. *Id.* at 175. The *Purifoy* Court determined that the posts constituted "unconsented contact" because the "posts were publicly available, and Ms. Purifoy viewed them, as [the respondent] intended." *Id.* at 190.

Like the respondent in *Purifoy*, Ms. Clark initiated numerous posts directed at Mr. Sixx. However, unlike in *Purifoy*, Mr. Sixx was not aware of Ms. Clark prior to the posts and did not personally know her. Thus, it was significantly less likely that Mr. Sixx would have seen Ms. Clark's posts absent some additional effort on Ms. Clark's part. However, Ms. Clark's use of the hashtags related to Mr. Sixx greatly increased the likelihood that he would see the messages (and did, in fact, achieve that obvious goal according to Mr. Sixx's testimony). As Mr. Sixx explained during trial, the use of the hashtags placed the posts in an index that Mr. Sixx monitored and that he sometimes utilized for business purposes. Knowing that Mr. Sixx viewed posts under these hashtags, Ms. Clark frequently used them in her posts concerning Mr. Sixx and his family. As she intended, Mr. Sixx saw the posts. Accordingly, given that posting on social media without "tagging" was found to constitute "unconsented contact" in *Purifoy*, *see* 556 S.W.3d at 190, Ms. Clark's posts with the accompanying hashtags clearly constitute contact with Mr. Sixx in violation of the 2023 Order. We therefore find Ms. Clark's argument regarding these posts to be unavailing.

B. Calculation of Contempt Counts

Ms. Clark contends that the trial court erred in concluding that Mr. Sixx had proven 100 counts of contempt against her. According to Ms. Clark, the trial court included count 43 in its total of 100 contempt violations despite its explicit finding that count 43 did not constitute a violation. Moreover, Ms. Clark asserts that the trial court found separate violations for counts 7 and 16 despite both counts referring to the same post. Upon our review of the record, we agree with Ms. Clark concerning these counts.

In the trial court's analysis of count 43 in the February 2024 order, the court found that the comment purportedly establishing this count did not violate the 2023 Order. However, in its subsequent summary of the counts that failed to constitute violations, the court omitted count 43 from the list of exceptions. This omission, although inadvertent, improperly increased the total count of Ms. Clark's criminal contempt violations by one.

Regarding counts 7 and 16, the posts to which the counts refer appear to have been exactly the same. They manifested identical pictures, captions, and hashtags. The only difference is that the post constituting count 7 was listed in the trial court's order as having

been posted on September 10, 2023, and the post constituting count 16 was referenced in the order as having been posted on September 9, 2023. However, the evidence in the record demonstrates that neither of the posts displayed a date of September 10, 2023, as alleged in count 7. Accordingly, we vacate the portion of the trial court's judgment finding violations for counts 7 and 43, and we modify the judgment to find a total of 98 counts rather than 100 by reason of the erroneous inclusion of those two counts.

## C. Pinned Posts

Ms. Clark also posits that the trial court erred when it found that Ms. Clark's act of "pinning" certain posts to the top of her Instagram account constituted republication of the posts, which referenced Mr. Sixx and included prohibited hashtags. Ms. Clark does not dispute that she pinned the posts as alleged. However, she argues that the "pinning" act did not actually violate the order because she was not creating a new post or publication.

As mentioned above, the 2022 Order, which was in effect when the respective posts were "pinned," was a lawful order that was clear, specific, and unambiguous. The 2022 Order prohibited Ms. Clark from contacting Mr. Sixx, and it specifically prohibited her from posting about Mr. Sixx with hashtags related to him, his band, his band mates, or his commercial activity. The order further barred her from posting about Mr. Sixx in any electronic media or from communicating with him in any way.

In its February 2024 order finding contempt, the trial court noted with regard to count 8 that the "pinned" posts shown therein were originally made in the summer months preceding entry of the 2022 Order. However, the screenshot of Ms. Clark's Instagram account, taken on September 18, 2023, demonstrated that these old posts had been "pinned" to the top of Ms. Clark's Instagram account on that date. The trial court found that by "pinning" these posts to the top of her account, Ms. Clark had republished the original posts.

We reiterate that when reviewing a finding of criminal contempt, the pivotal question is

> whether, considering the evidence in the light most favorable to the prosecution, any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996). The prosecution is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003).

*Cottingham*, 193 S.W.3d at 538. Significantly, if the defendant is found guilty of criminal contempt by the trial court, the defendant has the burden on appeal of illustrating why the evidence is insufficient to support the verdict of guilt. *Black v. Blount*, 938 S.W.2d 394, 399 (Tenn. 1996).

Following our review, we conclude that Ms. Clark has failed to meet her burden of demonstrating why the evidence regarding this count is deficient. We reiterate the trial court's earlier finding, supported by sufficient evidence, that Ms. Clark's use of Mr. Sixx's name and certain hashtags relating to him in her posts would ensure that Mr. Sixx received communication regarding the posts. By pinning these posts, which contained Mr. Sixx's name and prohibited hashtags, to the top of her Instagram account, Ms. Clark increased the likelihood of Mr. Sixx's seeing the posts. Accordingly, the evidence supports the trial court's determination that Ms. Clark was communicating with Mr. Sixx, in violation of the 2022 Order, by pinning these posts. We therefore affirm the trial court's ruling concerning count 8.

### D. Failure to Appear

Ms. Clark contends that the trial court erred by finding her in criminal contempt in its February 2024 order for her failure to appear in court on October 20, 2023. Ms. Clark argues that when she failed to appear for a hearing on that date, the trial court issued an attachment for her arrest, and she was subsequently incarcerated for one day. She accordingly urges that she should not have been found in contempt and assessed additional punishment in the February 2024 order after having previously been arrested and incarcerated for her failure to appear. However, Ms. Clark cites no authority for this proposition and has failed to develop her argument further. Accordingly, we conclude that this issue has been waived. *See Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("It is not the function of this Court to verify unsupported allegations in a party's brief or to research and construct the party's argument."); *Branum v. Akins*, 978 S.W.2d 554, 557 n.2 (Tenn. Ct. App. 1998) ("Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal."); *see also* Tenn. R. App. P. 27(a)(7) (requiring that an appellant's brief include an argument setting forth "the contentions of the appellant with respect to the issues presented . . . with citations to the authorities and appropriate references to the record.").

Finally, in the alternative, Ms. Clark argues that she should receive credit for her time served following the October 2023 order of attachment. We do find merit in this contention. Tennessee Code Annotated § 40-23-101(c) (West July 9, 2012, to current) provides: "The trial court shall . . . render the judgment of the court so as to allow the defendant credit on the sentence for any period of time for which the defendant was committed and held in the city jail . . . or county jail or workhouse, pending arraignment and trial." The statute directs trial court judges to provide credit for the pretrial

confinement, and it makes no distinction between traditional crimes and criminal contempt. *See LaDue v. LaDue*, No. E2004-02481-COA-R3-CV, 2005 WL 2043524, at *6 (Tenn. Ct. App. Aug. 25, 2005) ("A day in jail is a day behind bars whether one is incarcerated awaiting trial on a criminal charge or is in custody because he or she cannot make a bond set by a judge before whom a contempt citation is pending."). The plain language of the statute indicates that awarding the pretrial jail credit is mandatory. *See, e.g.*, *Bellamy v. Cracker Barrel Old Country Store, Inc.*, 302 S.W.3d 278, 281 (Tenn. 2009) ("When 'shall' is used in a statute or rule, the requirement is mandatory.") (citing *Stubbs v. State*, 393 S.W.2d 150, 154 (Tenn. 1965)).

The record demonstrates that Ms. Clark was taken into custody, pursuant to the October 2023 order of attachment, on November 8, 2023, and was released the following day. In the trial court's February 2024 order finding Ms. Clark in contempt of court, the trial court did not award Ms. Clark any credit for the time she had been held in confinement prior to the show cause hearing as required by the above-referenced statute. We therefore modify the trial court's judgment to allow Ms. Clark a credit for her pretrial confinement, decreasing Ms. Clark's sentence by one day.

## VII. Conclusion

For the foregoing reasons, we modify the trial court's judgment in part, vacating the contempt finding regarding count 7 and subtracting count 43, which was found not to constitute a violation of the order of protection, from the trial court's total. We further modify the trial court's judgment to allow Ms. Clark a credit for her pretrial confinement, thereby reducing her sentence by one day. Accordingly, the judgment is modified to reflect a total of 98 counts of contempt. These modifications also require that the judgment reflect total fines of $4,900 and a sentence of 293 days. The trial court's judgment is affirmed in all other respects. This case is remanded to the trial court for further proceedings consistent with this Opinion and collection of costs assessed below. Costs on appeal are assessed to the respondent, Vanessa Clark.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE

- 19 -